In the Matter of Mae E. Hotaling, on Behalf of Herself and All Others Similarly Situated, Respondent, against T. Norman Hurd, as Director of the Budget of the State of New York, et al., Appellants.

Third Department, July 24, 1957.

*Louis J. Lefkowitz, Attorney-General (Milton Alpert* and *John R. Davison* of counsel), for appellants.

*John T. DeGraff* and *John J. Kelly, Jr.,* for respondent.

BERGAN, J. For some time before March 31, 1954, the petitioner had occupied the State civil service position of principal statistics clerk, Department of Agriculture and Markets. On that date the position was in Civil Service Grade G-11. The maximum salary was $4,372 which petitioner was then receiving.

On March 30, chapter 307 of the Laws of 1954 became law. This set up a number of new salary grades in the civil service and it fixed the minimum and maximum salary in each grade (§ 1). The statute recited that the Legislature recognized that there were inequities in salaries in the State service, the solution for which was so complex that it could not be carried out before October 1 of that year.

It was the expressed intention of the Legislature that corrections could be made by the Director of the Classification and Compensation Bureau with the approval of the Director of the Budget in retroactive allocations on October 1 of positions to different grades.

On October 1, 1954 petitioner's job was reclassified downward to senior statistics clerk, a position that was placed in Grade 8 with a lower maximum salary than petitioner had been receiving. This downward classification was made retroactive to April 1. The position of principal statistics clerk itself was raised to Grade 12, with a higher maximum salary than petitioner had been receiving. The petitioner contends, and the court at Special Term has found, that the classification of the position she was occupying from principal statistics clerk to senior statistics clerk was arbitrary and thus unlawful.

But the merits of the decision to classify this position in a lower grade as a matter of administrative judgment cannot now be challenged here because the court as a matter of law is required to accept the reclassification as justified. Petitioner had the right to review the classification before the Director of Classification and could have appealed from his decision to the Classification and Compensation Appeals Board before January 1, 1955. (L. 1954, ch. 307, § 11.) She did not pursue the remedy thus afforded her and we treat the merits of the reclassification, i.e., whether it was reasonably justified in the case of the position she held, as conclusively established against the petitioner.

The argument she pursues is, however, that the downward reclassifications of positions were not made by the respondents in other departments or bureaus in instances where intervening seniority rights had accrued under other provisions of the Civil Service Law; and that it was only in a relatively few single positions similar to petitioner's where the respondents regarded it feasible to reclassify without intervention of seniority rights that such downgrading was effected.

If we admit, as we must, that on the merits, downgrading of this position was proper and justified, we ought not hold as a matter of law that because, in the judgment of administrative officers charged with the duty of classification, similar downgrading would not be feasible in other areas of the civil service, it is arbitrary to do it where it was found to have been proper and feasible.

To reclassify in this limited area may be good administrative judgment, or bad; but as a matter of law it is not such arbitrary action to warrant judicial interference. Petitioner shows merely a debatable question as to the classification and thus she does not demonstrate the need, or the right, of judicial interference with the administrative determination.

The other aspect of the case argued by the petitioner is that the retroactive downgrading of her position is unconstitutional. The court at Special Term has held that the downgrading made on October 1 and effective retroactive to April 1 is in violation of petitioner's constitutional rights. As we understand petitioner's constitutional argument it turns on such cases as *Fisk* v. *Jefferson Police Jury* (116 U. S. 131) and *Robertson* v. *Miller* (276 U. S. 174).

These cases held that where a man held public office at a stated salary it could not be reduced after he did the work without violating his contractual rights. But there are at least two important differences in the case before us. We are

here concerned with the period between April 1 and October 1, 1954. Before petitioner occupied the position for a single day during the period in dispute, April 1 to October 1, or did any work during that period, the statute had been enacted which permitted retroactive reclassification of her position. This necessarily included downgrading (Civil Service Law, § 39-a).

The Legislature was primarily concerned with upgrading, but it is perfectly clear that it had downgrading in mind, too, in cases where downgrading was warranted on the merits. Petitioner did not have to keep the position, as far as incurring retroactively an adverse effect on her position in the constitutional sense. She stayed in it for the period commencing April 1 with knowledge that a new statute had been enacted which authorized downgrading retroactive to April 1.

The second difference between this and the constitutional cases is that the statute protected her against actual reduction of salary. The provisions of subdivision 5 of section 8 of the 1954 statute are that no '' incumbent '' shall receive '' less '' than '' the gross annual rate of compensation received '' by him at a time referable back to April 1. This at once indicates an intention not to reduce actual salaries of incumbents whose positions were downgraded and an intention in some cases to authorize retroactive downgrading.

What petitioner is actually contending for, and what she has been held to have been entitled to have, is not protection against an actual reduction of salary, but to the benefit of an increased salary which she would have had if her position had been upgraded instead of downgraded.

The constitutional invalidity of this determination, therefore, is not clearly demonstrated. There are some residual and remote possibilities of disadvantage accruing against petitioner by the retroactive downgrading apart from salary, but it is clear from the Supreme Court decisions that while there is a constitutional right to an earned salary, there is no constitutional right to hold a public job, and any residual rights that may have existed were waived by continuance in the position with the knowledge that such rights might be adversely affected by the statute enacted March 30.

The order should be reversed and final order granted dismissing the petition, without costs.

FOSTER, P. J., HALPERN and GIBSON, JJ., concur.

Order reversed, on the law and the facts, and a final order granted, dismissing the petition, without costs.