OPINION OF THE COURT
Helen E. Freedman, J.
The issue in this CPLR article 78 proceeding concerns the proper classification of a newly created position in the Unified Court System, entitled deputy chief clerk (arraignment parts) *451 (DCCAP). The DCCAP position, devised in an effort to comply with a recent United States District Court order limiting the arrest to arraignment process in New York City Criminal Courts to a 24-hour period (Williams v Ward, 671 F Supp 225 [July 2, 1987, Motley, J.]), was created pursuant to an atypical contract between the State Unified Court System and the City of New York.
Petitioners seek an order setting aside the classification of the DCCAP position as "exempt confidential” and converting the title to "competitive”. The court must determine whether the qualities necessary to perform the DCCAP duties can be successfully tested by competitive or noncompetitive examination or are of such a managerial or confidential nature that objective examination is simply impracticable.
Petitioners are William Murphy, president of the New York State Court Clerks Association (the Association), and three principal court clerks who have applied for promotion to the DCCAP position. The Association is the certified bargaining representative of nonjudicial court employees in clerk titles within the City of New York. Respondent Albert M. Rosenblatt, Chief Administrative Judge of the Unified Court System of the State of New York (Rosenblatt), is responsible for the supervision, administration and operation of the Unified Court System. Respondent Office of Court Administration, State of New York Unified Court System (OCA), operates as the administrative arm of the Unified Court System, aiding the Chief Administrative Judge in the discharge of his duties under the Judiciary Law (see, Judiciary Law §§ 211-212; Rules of the Chief Judge [22 NYCRR] § 25.4).
It is the following announcement posted on September 28, 1987 for DCCAP positions in the Criminal Court in New York, Kings, Queens and Bronx Counties, that is challenged in this proceeding: "A Deputy Chief Clerk (Arraignment Parts), is employed in Criminal Court, New York City and is responsible for coordinating activities of three (3) or more arraignment parts in an arraignment complex. Since arraignments may take place on a 24 hour basis the incumbent must be prepared to work on any shift that the need requires. A Deputy Chief Clerk (Arraignment Parts) devises and maintains caseflow methods, ensures optimal deployment of staff in the various arraignment parts, and acts as liaison with judges, court administrators, public officers, and the general public on matters relating to the arraignment process. A Deputy Chief Clerk (Arraignment Parts) reports to the Deputy Chief Clerk *452 V and Chief Clerk of the Court and performs related duties as required.”
THE CLASSIFICATION PLAN
The DCCAP position was classified pursuant to an amendment to the State-wide Classification Plan, in which all locally paid court employees were transferred to the State payroll pursuant to the Unified Court Budget Act in 1976 (Judiciary Law § 39 [8] [a]). As part of that plan, the Legislature directed that the Administrative Board of the Judicial Conference adopt a uniform classification structure for new State employees, and that these employees be allocated to appropriate existing salary grades. (22 NYCRR former 25.45.) When the plan was adopted on April 23, 1979, retroactive to April 1, 1977, OCA set forth the standards and specifications for each title. Amendments to the plan, such as the creation of a new title within the Unified Court System, are adopted by OCA and the Chief Administrative Judge. (NY Const, art VI, § 28; Judiciary Law §§ 210-212; 22 NYCRR former 25.45 [a].)
Under the classification plan, all titles in the Unified Court System are placed in 1 of 4 jurisdictional classifications: exempt, noncompetitive, labor and competitive (Rules of the Chief Judge [22 NYCRR] § 25.7; see, Civil Service Law § 2 [10]; §§ 40-45). The exempt class includes all titles, other than those in the labor class, for which competitive or noncompetitive examinations are not "practicable” (22 NYCRR 25.8). Although section 41 (1) (d) of the Civil Service Law lists certain court positions as "exempt”: "one clerk and one deputy clerk if authorized by law, of each court, and one clerk of each elective judicial officer, and also one deputy clerk, if authorized by law, of any justice of the supreme court,” respondents do not contend that the proposed position comes within the parameters of these specified exemptions.
The noncompetitive class includes all titles that are not in the exempt class or the labor class for which it is not practicable to ascertain the merit and fitness of applicants by competitive examination but for which certain objective criteria such as education and experience can be utilized. (22 NYCRR 25.9; see, Civil Service Law § 42.) The competitive jurisdictional class includes all titles for which it is practicable to determine the merit and fitness of applicants by competitive examination (22 NYCRR 25.11; see, Civil Service Law §§ 44, 50).
Exempt and noncompetitive titles can also be designated as "confidential”. Civil Service Law § 201 (7) (a) defines "confiden *453 tial”[1] as referring to those employees "who assist and act in a confidential capacity to managerial employees”.

WILLIAMS v WARD

According to respondents, the DCCAP position was created in response to the recent decision and order of the Federal District Court in Williams v Ward (supra). That action was commenced by the Legal Aid Society in 1985 following an increase in the number of arrests in New York County and the increasing delays in the arrest-to-arraignment process.
The order enjoined Bejamin Ward, Police Commissioner of the city, and the other defendants from taking more than seven hours to complete steps necessary and incident to the arrest of detainees, except in exceptional circumstances. The city was also: "Enjoined from holding in their custody any [detainee] beyond a 24-hour period without a probable cause determination before a state judge, except in exceptional circumstances.” The Federal court concluded that the: "Detention of plaintiffs and members of their class beyond a period of 24 hours without a probable cause determination violates their rights under the Fourth and Fourteenth Amendments to the United States Constitution.”
Following that order, the State and city conceived the DCCAP position to create a liaison between the police department and the court system in order to expedite the arraignment process. Although not noted in the job description, the DCCAP is a result of a contract between the State of New York Unified Court System and the City of New York, entered into as of September 1, 1987. Under this contract,[2] the city provides funding for four State employee positions "responsible for coordinating the activities of all scheduled arraignment parts and any other arraignments which may be added during the term of this Agreement.”
Petitioners argue that respondents have ignored the policies and provisions of the Constitution, Civil Service Law and the *454 Judiciary Law in creating the DCCAP title as exempt. They assert that the creation of this hybrid position undermines the constitutional and statutory scheme requiring a uniform classification structure. They further claim that the DCCAP title closely parallels other court clerk titles, in terms of job responsibilities and required skills and abilities, is susceptible to staffing by means of an objective examination, and does not involve "confidential” information. They contend that the job description of the position of supervisor of arraignment parts, described in more detail below, classified as "noncompetitive” rather than "exempt confidential” is virtually identical to the job description of the DCCAP title.
Respondents contend, on the other hand, that as a result of the Federal court litigation, the DCCAP position involves "managerial”, rather than mere "supervisory duties” and must be "filled by someone with sensitivity, authority and interpersonal skills to interact effectively and give direction to personnel from criminal justice agencies, throughout New York City”. Matthew T. Crosson, the Deputy Chief Administrator of the Unified Court System of the State of New York, submits an affidavit in which he states that: "The exempt classification was appropriate for the new title because the managerial skills, abilities and personal characteristics necessary for successful performance of the job are not identifiable by means of an objective examination * * * Moreover, no absolute minimum qualifications could be established for the title, as the management and interpersonal characteristics required for the position could not be culled from a predetermined combination of education and experience”. The affidavit further states that: "[wjhile Court Clerks function as supervisors, even over multiple parts, they do not act as managers,” and that the available title of supervisor of arraignment parts, established in 1981 was never filled, because that position is "a supervisory, not a managerial title”. The key distinction is that the DCCAP position "includes giving direction to personnel who are not under the direct control of the court system” (i.e., the police). There is no indication that the DCCAP position will involve the direct formulation of policy or be of a personal or confidential nature within the usual meaning of those terms.
Although administrative determinations are subject to limited judicial review (Matter of Dillon v Nassau County Civ. Serv. Commn., 43 NY2d 574 [1978]), classification of civil service positions must be made in accordance with the Consti *455 tution and Civil Service Law and should have some rational basis in the record. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].)
The Constitution of the State of New York mandates that appointments and promotions to civil service positions "be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”. (NY Const, art V, § 6.) Although there are some civil service positions for which examinations are not practicable, exemption from the requirement is the exception and not the rule. (See, Matter of Grossman v Rankin, 43 NY2d 493, 502 [1977]; Chittenden v Wurster, 152 NY 345 [1897]; Matter of Holcombe v Gusty, 51 AD2d 868, 869 [4th Dept 1976].)
The criteria necessary to invoke the constitutional exception from the competitive testing requirements are limited to those cases where the position calls for: (i) the existence of a confidential relationship between the employee and appointing officer; (ii) the exercise of authority or discretion at a high level; or (iii) the appointee to have some expertise or personal qualities which cannot be measured by competitive examination. (Matter of Burke v Axelrod, 90 AD2d 577 [3d Dept 1982].) A review of the civil service positions held to be exempt and unfit for candidate selection through competitive or noncompetitive examination demonstrates that the majority involve employees who occupy "confidential positions” which by their nature entail confidential or personal relationships to the appointing officer. (See, e.g., Matter of Grossman v Rankin, supra, at 507 [Fuchsberg J., concurring and dissenting in part]; Chittenden v Wurster, supra, at 359-360; Matter of Holcombe v Gusty, supra, 51 AD2d, at 868.)
The phrase "confidential position” is construed narrowly and does not cover every position of trust and confidence. As stated in Matter of Volgenau v Finegan (163 Misc 554, 561 [Sup Ct, NY County 1937]): "A civil service examiner is certainly one upon whose integrity and secrecy the greatest reliance must be placed. And yet he belongs to the competitive class. He does not occupy any relation of personal confidence to the particular officer or board which appoints him, and in his case the most important desideratum is a broad knowledge and an ability to judge the intelligence of others — matters which can be well determined by competitive examination.” Thus, in order for a position to be considered confidential and be entitled to be placed in the exempt class, the relationship *456 between the employee and the appointing officer must be of a personal nature.
There has been no evidence presented to demonstrate that the DCCAP occupies a "confidential position” with anyone within the meaning of the Constitution or Civil Service Law. The relationship between the DCCAP and the Chief Administrative Judge of the Criminal Court is not of a personal nature since the DCCAP does not directly work for or regularly report to the Administrative Judge. (Cf., Matter of Holcombe v Gusty, 51 AD2d, at 868, supra.)
The DCCAP position similarly fails to qualify as a position requiring the exercise of "authority or discretion at a high level” warranting an exempt classification. The DCCAP is the fourth clerical-administrative employee in the chain of command (following the Administrative Judge of the Criminal Courts, Chief Clerk of the Criminal Court and two levels of deputy chief clerks). According to an organizational chart submitted by respondents at this court’s request, no other court in the judicial system has more than two levels of exempt positions below that of the Administrative Judge. The Criminal Court would be the first to have a fourth level of "exempt” employees. There is no rationale presented to demonstrate how or why the DCCAP will be delegated the task of formulating Criminal Court arraignment policy.
The job descriptions disclose that the duties of the supervisor of arraignment parts, designated as "noncompetitive”, are indistinguishable from those of the DCCAP. "A Supervisor of Arraignment Parts works in Criminal Court, New York City and is responsible for coordinating activities of three (3) or more arraignment parts in an arraignment complex. A Supervisor of Arraignment Parts devises and maintains caseflow methods, ensures optimal deployment of staff in the various arraignment parts, and acts as liaison with judges, court administrators, public officials, and the general public on matters relating to the arraignment process. A Supervisor of Arraignment Parts Reports to the Deputy Chief Clerk and Chief Clerk of the Court and performs related duties as assigned.” The court acknowledges that while the liaison role of both titles is one which may not be susceptible to competitive examination, respondents’ designation of exempt confidential rather than noncompetitive appears to be arbitrary and contrary to law. (CPLR 7803.)
The essential distinction (relied upon by respondents) be *457 tween the existing and substantially similar noncompetitive position and the exempt position which is at issue does not appear in the DCCAP job announcement or in the DCCAP title standard, but instead, arises under the contract between the city and the respondents. However, that contract cannot be utilized to undermine the uniform classification structure mandated by the State Constitution, the Civil Service Law and rules and regulations and the Chief Administrative Judge.
Finally, it appears that respondents promulgated the new title without a hearing or opportunity for input by the affected employees as required by Judiciary Law § 211 (1) (d).
Accordingly, based on all of the facts and circumstances before the court, the application is granted to the extent of declaring that the appropriate jurisdictional classification of the DCCAP title is "noncompetitive”, and of setting aside the challenged jurisdictional classification (exempt/confidential) of the DCCAP title, and remanding this matter to respondents for an appropriate revision of the title standard, in accordance with this decision.

. A potentially significant distinction between the "exempt” or "confidential” designations and all others is that employees designated exempt and/or confidential serve at the pleasure of the appointing authority and are ordinarily subject to termination at any time without a hearing. (22 NYCRR 25.29.) Other employees generally may be removed if disciplined only for incompetency or misconduct and after an administrative hearing. (22 NYCRR 25.29 [a].)

. None of the appendices annexed to the contract have been submitted to the court.