OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that the second amended petition in this special proceeding is granted in part and denied in part; and it is further ordered and adjudged that the second amended petition in this special proceeding (No. 001) by petitioners is granted to the extent that the matter is remanded to the respondent, Chief Administrative Judge, for further consideration consistent with the decision of the court, on behalf of the petitioners who are NYS Court Officers and those similarly situated members of the petitioner Association; and it is further ordered and adjudged that the second amended petition in this special proceeding on behalf of Donald Curaba, who is a NYS Court Officer-Sergeant, and those similarly situated members of the petitioner Association, is dismissed; and it is further ordered and adjudged that this constitutes the decision and judgment of the court and that petitioners shall recover from respondent such costs and disbursements as shall be taxed and allowed by the clerk upon submission of a bill of costs and petitioners shall have execution therefor.
This special proceeding, commenced by several individual members and on behalf of similarly situated members of the Suffolk County Court Employees Association, Inc.,[1] challenges a portion of the respondent Chief Administrative Judge’s (CAJ) January 8, 2004 and December 22, 2004 amendments to the Classification Plan with respect to the court security series.[2]
Historically, by virtue of the Unified Court Budget Act of 1976, the State assumed responsibility for local court costs and *187 all locally paid court employees were transferred to the State payroll (L 1976, ch 966, § 2, as amended [codified at Judiciary Law § 39]). By virtue of a constitutional amendment adopted in November 1977, the power to adopt a classification structure for employees was assumed by the Chief Judge of the Court of Appeals (see NY Const, art VI, § 28 [b]) and he appoints a Chief Administrator, or, if a judicial officer, a Chief Administrative Judge, to supervise the operations of the court system (see NY Const, art VI, § 28 [a], [b]). The first Classification Plan for nonjudicial employees was adopted by administrative order dated May 28, 1979. The title for each position sets forth duties and responsibilities and the knowledge, skills, and abilities required to perform those duties and responsibilities.
Prior to January 8, 2004, court security titles were classified into two parallel command lines. For purposes of this proceeding, Court Officers were designated as Judicial Grade 16 (JG-16) and Court Officer-Sergeants were designated as Judicial Grade 17 (JG-17) (see exhibits A, B, aff of Lawrence K. Marks, dated June 8, 2009). On January 8, 2004, an administrative order was adopted by the then Chief Administrative Judge (see exhibit I, aff of Lawrence K. Marks, dated June 8, 2009) which amended the Classification Plan and combined the two command lines to form a unified command line. The administrative order adopted eight new title standards, only two of which are the subject of this proceeding. By virtue of that order, Court Officers became New York State Court Officers (JG-17) and Court Officer-Sergeants became New York State Court Officer-Sergeants (JG-19) (see exhibit I, aff of Lawrence K. Marks, dated June 8, 2009).
The intent of the new security series was to eliminate the bifurcated approach to security by adopting titles that apply to all trial courts. The titles of Court Officer (JG-16) and Senior Court Officer (JG-18) were abolished. A new trainee title was established and classified as NYS Court Officer-Trainee (JG-14).
Thereafter, the then CAJ, by new administrative order dated December 22, 2004, amended the Classification Plan with regard *188 to four new title standards (see exhibit K, aff of Lawrence K. Marks, dated June 8, 2009), which was made retroactive to January 8, 2004, the date of the initial administrative order and the new Classification Plan for the security titles. However, the only material change of this new order was the reallocation of the position of New York State Court Officer from JG-17 to JG-18. Petitioners repeatedly claim that the new order also reallocated the position of New York State Court Officer-Sergeant from JG-18 to JG-19 (see second amended petition, dated Mar. 17, 2009, para 10). However, this court can find no support for that allegation in the various papers submitted in support and in opposition to this proceeding. All papers consistently show that the Sergeant grade went to JG-19 by virtue of the January 8, 2004 amendment to the Classification Plan and not the December 22, 2004 administrative order.
While the affidavit from Lawrence K. Marks, the Administrative Director for the Unified Court System, fails to offer a reason for the retroactive change of the position of New York State Court Officer from JG-17 to JG-18, the reply memorandum, submitted on behalf of the Chief Administrative Judge, offers the following acknowledgment: “After initially allocating the NYS Court Officer title to the JG-17 salary grade, the Chief Administrative Judge determined that the JG-18 salary grade was more appropriate, because the NYS Court Officer title is roughly comparable to the former Senior Court Officer title” (at 8).
On April 6, 2005, the respondent issued paychecks for the pay period ending March 23, 2005, reflecting the salary adjustments that occurred by virtue of the new administrative order of December 22, 2004 (see exhibit E, aff of Anthony Cetta, dated Mar. 19, 2009). This proceeding was commenced on July 22, 2005, within four months of issuance of the adjusted paychecks.
Petitioners contend that each of the new titles, that is, NYS Court Officer and NYS Court Officer-Sergeant, perform the same duties of the positions in the security title series that formerly existed and they seek a salary increment that reflects continuous service in titles that they held prior thereto (see Judiciary Law § 37 [3]). Petitioners also contest the retroactivity of the December 22, 2004 administrative order and contend that the retroactive allocation of the titles denied them the salary increases they were entitled to pursuant to Judiciary Law § 37 (11). The Chief Administrative Judge contends that the duties are substantially different from the prior titles and that *189 the Court Officers are not entitled to a continuous service credit. The current Chief Administrative Judge also contends that she has broad discretionary authority to deem the subsequent modification to be part of the original reclassification and that a rational basis exists for making that determination.
The first issue to be decided is whether the change in the court security title series, with regard to the two positions in question, constituted a reallocation of the positions, as contended by the petitioners, or a reclassification of the positions, as claimed by the Chief Administrative Judge. The court will first examine the Court Officer position.
Both parties agree that a reallocation of a title occurs when a position is allocated to a new salary grade without a change in the duties of the position and that, in such an event, Judiciary Law § 37 (11) sets forth the procedure for the calculation of salary upon reallocation. It is also understood that a reclassification of a title occurs when a position is reclassified to a new title or salary grade based upon a substantial change in the duties of the position and that Judiciary Law § 37 (5) is used to recalculate the salary upon reclassification. It is also agreed that the predecessor respondent implemented the January 8, 2004 order as if it created new positions and reclassified the positions pursuant to Judiciary Law § 37 (5). Furthermore, Judiciary Law § 37 (3) (c) provides that when a position is reclassified to a title with a higher salary grade, with no substantial change in duties from the former title, the employee receives credit for time worked in the lower title for purposes of additional increments.
Petitioner Anthony Cetta submitted an affidavit which states that as a NYS Court Officer he is performing the same work that he performed in his former title as a Court Officer. The second amended verified petition supports the claim. At oral argument, the court offered to hold a hearing on the issue of whether the titles perform the same duties and have the same responsibilities as the titles that existed prior to the January 8, 2004 reclassification. However, the respondent, who contends that the reclassified titles are substantially different from the duties and responsibilities performed by the prior titles, also asserts that even if the daily duties of the Court Officers before and after reclassification have not changed, their legal job duties and responsibilities have. “Classification and reallocations are based upon changes in titles, as reflected in the title standards, and not upon particular duties of a given individual in any given title at any particular point in time” (see aff of Lawrence K. *190 Marks, dated June 8, 2009, para 22). Both parties agree that the legal duties are established by the title standards for each position (see Matter of Gavigan v McCoy, 37 NY2d 548, 551 [1975]; see also Judiciary Law § 39 [8] [a]).
The court therefore undertook a detailed review of the titles in question and finds that the prior Court Officer title and the new NYS Court Officer title are engaged in basically the same work, with equivalent levels of responsibility, and that any differences between the titles are insignificant. An examination of the prior title (see exhibit A, aff of Lawrence K. Marks, dated June 8, 2009) discloses 13 “Typical Duties,” all of which have been incorporated, verbatim, into the new title, NYS Court Officer (see exhibit I, aff of Lawrence K. Marks, dated June 8, 2009). While the new title has 19 “Typical Duties,” the six extra duties listed amount to little more than the rewording of the existing duties.
For instance, the first extra duty listed, that is, the third, “Assumes a post or patrols the courthouse to maintain order by removing or calming disruptive individuals,” is simply a restatement of the first duty listed, “Provides security by standing in the courtroom and patrolling the courthouse,” and what was the prior third listed duty and now is the fourth, “Physically restrains unruly individuals.” The extra duty listed of “Escorts, guards, and delivers materials to sequestered juries” was certainly encompassed in the preexisting duties of “Escorts judges, juries, witnesses and prisoners to and from the courtroom,” “Displays and safeguards exhibits in the courtroom,” and “Distributes and posts appropriate documents and court materials.”
The prior duty listed of “Provides assistance in emergency situations,” coupled with the prior requirement of “Knowledge of first-aid,” is simply restated under the new duty of “Administers first aid and assistance to individuals during emergencies, accidents or illnesses.” Finally, the prior duties of “Checks to ensure that all necessary documents are available prior to court sessions” and “Distributes and posts appropriate documents and court materials” are encompassed in the new listed duty of “Checks bench to ensure that the Judge has adequate supplies, proper forms, and other materials.”
A comparison of the relevant title standards demonstrates that the Court Officers’ duties and responsibilities are sufficiently similar so that a reclassification was not justified. The only reason offered in support of the claim that the reclassifica *191 tion was based upon substantial changes in duties and responsibilities is set forth in paragraph 13 of the affidavit of Lawrence K. Marks. He offers that prior to reclassification, the JG-16 title provided security in the courts of limited jurisdiction and that the abolished Senior Court Officer title provided security in the Supreme, County, and Surrogate’s Courts, which “held many more jury trials than the limited jurisdiction courts.”
However, such a distinction, that is, what courthouse one serves in, is not the proper analysis. What has to be examined is the respective duties of each title and it is clear that both titles performed duties with regard to jurors and jury trials. In fact, Court Officers assigned to the Suffolk County District Court, just as those employed in similar courts, were tasked to escort, protect, and assist jurors on a daily basis. Such was not a new or different task, it was a preexisting one under the JG-16 title. It certainly did not constitute a “substantial change in duties and responsibilities.”
Respondent’s argument that prior title specifications for Court Officer were court specific is one that has been rejected with regard to Court Clerk titles (see Matter of Association of Secretaries to Justices of Supreme & Surrogate’s Cts. in City of N.Y. v Office of Ct. Admin, of State of N.Y., 75 NY2d 460 [1990]) and Secretary to Judge and Senior Secretary to Judge titles based upon the size of the county-level court in which they worked (see Matter of Bellacosa v Classification Review Bd. of Unified Ct. Sys. of State of N.Y., 72 NY2d 383, 390 [1988] [“the duties and responsibilities set forth in the two job titles under consideration were virtually identical”]). Similarly, arguments concerning the difference in the origin of authority to entertain issues did not contradict respondent’s conclusion that the duties and responsibilities of two titles (Support Magistrate and Court Attorney-Referee) were similar (see Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys., 55 AD3d 1070 [3d Dept 2008]). It is the examination of the duties and responsibilities that is controlling (see Matter of Shanahan v Classification Review Bd. of Unified Ct. Sys. of N.Y., 168 AD2d 217 [1st Dept 1990]; see also Matter of Murphy v Rosenblatt, 140 Misc 2d 450 [Sup Ct, NY County 1988], affd as mod 153 AD2d 524 [1st Dept 1989]).
Finally, respondent claims, without proof, that unlike the JG-16 title, the new title, like the Senior Court Officer title, is regularly involved with cases and proceedings more likely to draw public attention. Aside from the fact that such a claim is *192 not reflected in the duties and responsibilities of the respective titles, it does not reflect the reality of the sheer volume of litigants, family members, attorneys, and jurors, that traverse the halls of the District and Family Courts each day.
Mindful that the Chief Administrative Judge possesses broad classification and allocation authority, which “power lies at the heart of the CAJ’s authority to administer the unified court system” (Matter of Bellacosa v Classification Review Bd. of Unified Ct. Sys. of State of N.Y., 72 NY2d 383, 391 [1988]) and that such authority will not be disturbed by the courts unless it is arbitrary or irrational (see Cove v Sise, 71 NY2d 910 [1988]; Matter of Botti v Lippman, 290 AD2d 923 [3d Dept 2002]), this court holds that no rational basis has been set forth by respondent supporting the claim that the duties of the prior Court Officer title and the new NYS Court Officer title are substantially different. Unlike the affidavit offered in Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys. (55 AD3d 1070 [2008], supra) or even Matter of Kaye v Lippman (241 AD2d 159 [3d Dept 1998]), where a rational basis could be gleaned from a fair reading of the determination, here, no rational basis is offered and the action must be deemed to be arbitrary and contrary to law (see CPLR 7803).
Accordingly, since petitioners have established a clear legal right to the relief sought, the January 8, 2004 administrative order, as it relates to the NYS Court Officer title, is vacated and the matter is remanded to the respondent Chief Administrative Judge for further consideration on behalf of the petitioners, except Donald Curaba, and those similarly situated members of the petitioner Association, consistent with the decision of the court (see Matter of Shanahan v Classification Review Bd. of Unified Ct. Sys. of N.Y., 168 AD2d 217 [1990], supra; Matter of Murphy v Rosenblatt, 153 AD2d 524 [1989]).
Respondent has raised a statute of limitations defense to petitioners’ claims.[3] In particular, as set forth in point 1 of respondent’s memorandum of law, this challenge relates to the January 8, 2004 administrative order. It is not disputed that the petitioners’ demands for relief pursuant to CPLR 7803 (3) are governed by the four-month statute of limitations set forth in *193 CPLR 217. Nor is it disputed that this statutory period begins to run when the determination to be reviewed becomes “final and binding upon the petitioner” (CPLR 217 [1]). The burden is on the agency to demonstrate the existence of a final and binding determination (see Matter of Turner v Bethlehem Cent. School Dist., 265 AD2d 640, 641 [3d Dept 1999]). Additionally, the party seeking the benefit of the defense “bears the burden of establishing by prima facie proof that the Statute of Limitations has elapsed” (Siegel v Wank, 183 AD2d 158, 159 [3d Dept 1992]).
The Court of Appeals has repeatedly instructed that an agency action is “final and binding upon the petitioner” within the purview of CPLR 217 (1) when the petitioner seeking review has been aggrieved by it or it has impact on the petitioner (see e.g. Matter of Carter v State of N.Y., Exec. Dept., Div. of Parole, 95 NY2d 267 [2000]; Stop-The-Barge v Cahill, 1 NY3d 218 [2003]; Matter of Essex County v Zagata, 91 NY2d 447 [1998]). Moreover, the limitations period does not begin to run until the aggrieved party is aware of the determination and the fact that he or she is aggrieved by it (see Matter of New York Tel. Co. v Nassau County, 267 AD2d 629 [3d Dept 1999], lv denied 95 NY2d 756 [2000]).
However, where agency reconsideration of the matter “appears to have been a fresh, complete and unlimited examination into the merits” (Matter of Camperlengo v State Liq. Auth., 16 AD2d 342, 344 [1st Dept 1962]), the statutory period within which to commence a review proceeding is renewed (see e.g. Matter of Corbisiero v New York State Tax Commn., 82 AD2d 990 [3d Dept 1981], affd 56 NY2d 680 [1982]; see also Chase v Board of Educ. of Roxbury Cent. School Dist., 188 AD2d 192 [3d Dept 1993]). This is the opposite of the situation where an application for reconsideration is denied and does not toll or otherwise extend the statute of limitations (see Matter of Stearns v Office of Ct. Admin., 260 AD2d 900 [3d Dept 1999]; Matter of Lubin v Board of Educ. of City of N.Y., 60 NY2d 974 [1983], cert denied 469 US 823 [1984]).
Here, the record indicates that after review, “the Chief Administrative Judge determined that the JG-18 salary grade was more appropriate, because the NYS Court Officer title is roughly comparable to the former Senior Court Officer title” (reply mem on behalf of the Chief Administrative Judge, at 8). Such reconsideration, on December 22, 2004, granted as a matter of discretion, does “constitute the sort of ‘fresh, complete *194 and unlimited examination into the merits’ as would suffice to revive the Statute of Limitations” (Raykowski v New York City Dept. of Transp., 259 AD2d 367 [1st Dept 1999] [citation omitted]; see Matter of Apple’s Deli, Inc. v State of New York, 50 AD3d 1027 [2d Dept 2008]; see e.g. Matter of Eldaghar v New York City Hous. Auth., 34 AD3d 326 [1st Dept 2006], lv denied 8 NY3d 804 [2007]; Matter of Quantum Health Resources v De-Buono, 273 AD2d 730 [3d Dept 2000]).
Respondent cannot ignore the impact of the “fresh, complete and unlimited examination into the merits” on the statute of limitations issue. Here, respondent conceded at oral argument that the first salary adjustments that occurred by virtue of the new administrative order of December 22, 2004 and which incorporated the reconsideration determination into the salary computations were issued on April 6, 2005. This proceeding was timely commenced on July 22, 2005, within four months of issuance of the adjusted paychecks (see Town of Riverhead v County of Suffolk, 78 AD3d 1165 [2d Dept 2010] [statute of limitations began to run when trailers were installed and not from decision to install them]; Matter of Agoglia v Benepe, 77 AD3d 927 [2d Dept 2010] [statute of limitations began to run when dunes were erected and not from decision to erect them]).
Moreover,
“[i]f an agency has created ambiguity or uncertainty as to whether a final and binding decision has been issued, the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court” (Matter of Carter v State of N.Y., Exec. Dept., Div. of Parole, 95 NY2d 267, 270 [2000], supra [internal quotation marks omitted], quoting Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978]).
Here, ambiguity abounds with the retroactive impact of the December 22, 2004 administrative order on the January 8, 2004 order.
Finally, respondent cannot successfully argue for the dismissal of a prior proceeding in 2005 as being premature because of respondent’s claim that she was still in the process of rolling out the components of the Classification Plan and it was therefore too early to be able to determine if there was no substantial change in the duties or responsibilities of the affected titles (see Matter of McKillop v Lippman, 9 Misc 3d 635 *195 [Sup Ct, NY County 2005]), and now claim that this proceeding is untimely. The doctrine against inconsistent positions can be considered under such circumstances.
Respondent has failed to satisfy the burden of demonstrating the existence of the January 8, 2004 administrative order as a final and binding determination, with regard to the NYS Court Officer title. It therefore appears that the affected NYS Court Officers, serving in Suffolk County, are entitled to a continuous service credit pursuant to Judiciary Law § 37 (3), to preserve the salary step to which such employee advanced in the prior salary grade before the title change.[4]
The court arrives at a different conclusion with regard to the Court Officer-Sergeant and NYS Court Officer-Sergeant comparisons. Upon review of the respective titles, the court finds that the new title of NYS Court Officer-Sergeant includes duties that are substantially broader in scope and more demanding than those of the prior title. There exist differences in the importance of the duties and responsibilities, including a more proactive role and responsibility for the on-the-job training of the NYS Court Officer-Trainees and responsibility for the evaluation of such Trainees and NYS Court Officers. The prior title did not possess such direct responsibilities and did not require as much expertise as the duties now required. The new title also possesses a more active role in locating, maintaining, and updating in-court records, with new responsibilities in emergency situations.
An examination of the prior title (see exhibit B, aff of Lawrence K. Marks, dated June 8, 2009) discloses 11 “Typical Duties,” portions of which have been incorporated into the new title, NYS Court Officer-Sergeant (see exhibits I, O, aff of Law *196 rence K. Marks, dated June 8, 2009). The new title has 30 “Typical Duties,” some of which, as detailed above, go beyond the preexisting duties.
Once again, mindful that the Chief Administrative Judge possesses broad classification and allocation authority, this court cannot agree with petitioners’ claim that, with regard to the NYS Court Officer-Sergeant title, the January 8, 2004 administrative order was not a reclassification but a reallocation. The court finds that the reclassified title is substantially different in duties and responsibilities performed by the prior title. “Where there is a fair and reasonable ground for difference of opinion as to classification, the court will not interfere with the judgment of the administrative body or officer” (Matter of McGreevy v Classification Review Bd. of Unified Ct. Sys. of State of N.Y., 154 AD2d 678, 678 [2d Dept 1989], quoting Donegan v Nadell, 113 AD2d 676, 680-681 [2d Dept 1986]).
Here, respondent has shown that there was a substantial difference between the classifications in dispute and has furnished a rational basis for the determination concerning the NYS Court Officer-Sergeant title (see Matter of Civil Serv. Empls. Assn., Local 810 v Clinton County Dept. of Pub. Health, 169 AD2d 970 [3d Dept 1991]; Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v State Univ. of N.Y., 280 AD2d 832 [3d Dept 2001]; Matter of Hansen v Schneider, 141 AD2d 823 [2d Dept 1988]; Matter of Adelman v Bahou, 85 AD2d 862 [3d Dept 1981]).
Moreover, since the record before this court demonstrates that, unlike the NYS Court Officer title, the NYS Court Officer-Sergeant title was not affected by the December 22, 2004 administrative order, that branch of the proceeding is dismissed as time-barred (see CPLR 217 [1]).
With regard to the second issue to be decided, petitioners contend that when the respondent, by virtue of the December 22, 2004 order, amended the Classification Plan retroactively to January 8, 2004, and increased the salary grade of the NYS Court Officer title from JG-17 to JG-18, the petitioners were denied the benefits of reallocation pursuant to Judiciary Law § 37 (11) and were denied credit toward additional increments from time worked in their “reclassified” positions from January to December 2004.
Petitioners contend that under the applicable law, the December 22, 2004 administrative order should be deemed a prospective reallocation. As noted above, that order did not *197 make a retroactive allocation in salary grade for NYS Court Officer-Sergeant titles. Petitioner Anthony Cetta submitted an affidavit which explained that with the retroactive change in salary grade from JG-17 to JG-18, by virtue of the December 22, 2004 order, and as interpreted by the respondent, his salary adjustment is incorrect and the time needed to obtain the next longevity step has been extended, contrary to the controlling law set forth above.
Respondent acknowledges that
“when a job change is based upon a change in salary only because there has been no change in the duties and responsibilities in the position, the movement to a title in a higher grade is treated as a salary reallocation, and the employee is entitled to the same salary step in the higher salary grade that he held prior to the reclassification” (mem of law on behalf of the Chief Administrative Judge, at 10).
However, respondent contends that due to the broad discretionary authority conferred upon the Chief Administrative Judge to classify and allocate the job titles of the Unified Court System, the CAJ can modify the salary grade of a particular job title and deem this subsequent modification to be part of the original reclassification. Respondent argues that as long as there is a rational basis for the retroactive reallocation, petitioners’ challenge must be rejected.
The court believes that based upon its holding above, this issue may well be moot, since the NYS Court Officer title is to be reallocated and not reclassified as of January 8, 2004. However, even if the challenge to the January 8, 2004 administrative order is time-barred, nevertheless, the challenge to the December 22, 2004 administrative order is timely and the claim of prospective reallocation has merit. The first adjusted checks issued after that order indicate that the respondent did not pay the additional adjustment due upon reallocation, as argued by petitioners.
Classifications must be made in accordance with the NY Constitution and the Judiciary Law and should have some rational basis in the record. An agency’s reasonable interpretation of the statutes and regulations it administers is entitled to substantial deference (see Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988]) and will be upheld if it is not irrational, unreasonable, or contrary to governing language. However, where the question is one of pure legal interpretation of such terms, such deference *198 is not required (see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y., 91 NY2d 413, 419 [1998]).
As noted above, the affidavit from the Administrative Director for the Unified Court System failed to offer a reason for the retroactive change of the New York State Court Officer title from JG-17 to JG-18, but counsel contends that the Chief Administrative Judge determined that the JG-18 salary grade was more appropriate, because the NYS Court Officer title is roughly comparable to the former Senior Court Officer title. The issue, however, is not the reason for the change in salary grade, but whether, in this case, the change can be made retroactively.
The only case law that this court can find which discussed retroactivity involved retroactive reclassifications that were authorized by particular statute. Retroactive reclassifications of salary grades were a part of the original administrative order of May 28, 1979, which adopted the first Classification Plan. Therein, the salary grades were made retroactive to April 1, 1977, based upon the dictates of the enabling legislation (see Judiciary Law § 39 [8] [a] [formerly Judicary Law § 220]; see also Matter of Association of Secretaries to Justices of Supreme & Surrogate’s Cts. in City of N.Y. v Office of Ct. Admin, of State of N.Y., 75 NY2d 460, 468 [1990], supra; Matter of Mager v Bartlett, 69 AD2d 517, 518 [3d Dept 1979]). Additionally, in Matter of Hotaling v Hurd (4 AD2d 339 [3d Dept 1957], affd 4 NY2d 979 [1958]), a statute was enacted (L 1954, ch 307) which permitted retroactive reclassifications, including downgrading of positions. Grandfathering in the context of a downward reclassification is an accepted practice (see Matter of New York State Ct. Clerks Assn. v Crosson, 269 AD2d 335 [1st Dept 2000]), since such effectuates the mandate of Civil Service Law § 121 (2) (a) (see also 22 NYCRR 25.5 [e]).
As noted, this court recognizes the authority of the Chief Administrative Judge to adopt and revise classifications and allocations and that such power is delegated exclusively to the CAJ or a designated representative (see Matter of Bellacosa v Classification Review Bd. of Unified Ct. Sys. of State of N.Y., 72 NY2d 383, 391 [1988], supra). While this court acknowledges the power to classify and reclassify and to allocate and reallocate, the respondent insists that such power includes the ability to perform those tasks retroactively. Respondent only references 22 NYCRR 25.5 (c) as the exclusive basis of the power of the CAJ to determine the effective date of any allocation.
*199 Judiciary Law § 211 (1) (d) states, in part, that “[s]tatewide standards and policies concerning personnel practices relating to nonjudicial personnel shall be consistent with the civil service law.” Various sections of 22 NYCRR 25.5 spring from the provisions of Civil Service Law § 121, including 22 NYCRR 25.5 (e) from Civil Service Law § 121 (2) (a) and portions of 22 NYCRR 25.5 (c) from Civil Service Law § 121 (2) (c). Respondent refers to the first sentence of 22 NYCRR 25.5 (c), which permits the effective date of a reallocation to be determined by the CAJ. However, the corresponding provision of the Civil Service Law, that is, section 121 (1), only authorizes prospective effective dates for classifications or allocations, that is, “effective on the first day . . . following approval.” The court notes that when new title standards were adopted on October 15, 2008 for the NYS Court Officer-Sergeant title, such was made prospectively (see exhibit L, aff of Lawrence K. Marks, dated June 8, 2009).
Here, respondent argues that the petitioners are not entitled to a higher step placement (see reply mem, at 3) based on the prospective application claim. Petitioners argue that by making the reallocation retroactive, they were denied salary increases to which they were entitled to under Judiciary Law § 37 (11) (a) and (b) and denied the benefit of the time they worked in their reclassified positions from January to December 2004 (see reply aff of David Schlachter Esq., dated May 18, 2010, paras 4-5).
The power of the Chief Administrative Judge to promulgate salary schedules, allocated to salary grades, must be “in accordance with law” (Judiciary Law § 37 [1] [a]). All such personnel practices must “be consistent with the civil service law” (Judiciary Law § 211 [1] [d]). The companion Civil Service Law provision only authorizes prospective effective dates for classifications or allocations (see Civil Service Law § 121 [1]). While no provision of the Judiciary Law expressly prohibits retroactive reallocations, no provision expressly authorizes it, even the referenced court rule, unlike the cases set forth above.
Based upon the record before the court and a fair reading of the governing statutes, a ground for limited judicial interference has been demonstrated. In the instant case, the utilization of a retroactive allocation appears to be inconsistent with intendment of the governing statutory language. Such, coupled with the example of the harm caused by the respondent’s calculation of salary contrary to Judiciary Law § 37 (11) (a) and (b), compels the conclusion that petitioners are entitled to *200 review and relief from the Chief Administrative Judge. It appears to this court that, in the present context, petitioners are entitled to salary increments due for the time in question. Since respondent has not acted in complete accord with the dictates of Judiciary Law § 37 (11) or Judiciary Law § 37 (3) (concerning continuous service credit or longevity payments), it can be said that respondent acted in an arbitrary manner. In light thereof, the matter is remanded to the respondent Chief Administrative Judge for further consideration on behalf of the petitioners, except Donald Curaba, and those similarly situated members of the petitioner Association, consistent with the decision of the court (see Matter of Shanahan v Classification Review Bd. of Unified Ct. Sys. of N.Y., 168 AD2d 217 [1990], supra; Matter of Murphy v Rosenblatt, 153 AD2d 524 [1989]).
Accordingly, the petition is granted to the extent that the matter is remanded to the respondent Chief Administrative Judge for further consideration consistent with the decision of the court, on behalf of the petitioners who are NYS Court Officers and those similarly situated members of the petitioner Association. The petition, on behalf of Donald Curaba, who is a NYS Court Officer-Sergeant, and those similarly situated members of the petitioner Association, is dismissed.

. The Association is the certified representative for nonjudicial employees employed by the respondent in Suffolk County, including NYS Court Officers and NYS Court Officer-Sergeants.

. This proceeding has a singular procedural history. It was commenced by filing with the County Clerk of Suffolk County on July 22, 2005. However, it was never initialized with a request for judicial intervention until December 15, 2009, over four years after filing, when it was assigned to this court. Prior thereto, the parties entered into a stipulation that permitted an amendment of the caption and the setting of a new return date. That stipulation was so ordered by this court on January 7, 2010, the same date a short form order *187 was issued directing a court conference on the amended notice of petition andamended petition. The conference of March 12, 2010 established a briefing schedule on the issues raised at the conference. After various adjournments of the submissions, by short form order dated August 21, 2010, oral argument was directed and was held on October 1, 2010. As a result of the oral argument, and with the consent of the respondent, a second amended petition, dated October 21, 2010, was filed with the court, which expanded the relief requested to include all similarly situated members of the petitioner Association. Respondent submitted her answer on October 29, 2010.

. The court notes that no issue has been raised as to whether petitioners were required to exhaust any available administrative remedies (see 22 NYCRR 25.5 [d]; cf. Coddington v Crosson, 183 AD2d 428 [1st Dept 1992]) and, as such, is waived. Additionally, the defense of laches was abandoned in the papers and at oral argument.

. Respondent, in the submitted papers and at oral argument, claimed that a decision in favor of the petitioners would have statewide budgetary implications, potentially costing $5.4 million more than the cost of a reclassification (see aff of Lawrence K. Marks, dated June 8, 2009, at 17 n 6). However, CPLR article 78 determinations apply prospectively to “subsequent petitioners” (Matter of Jones v Berman, 37 NY2d 42, 57, [1975]) with timely causes of action (see New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 206-207 [1994]). The commencement of this proceeding did not toll the statute of limitations for similarly situated individuals and does not revive dead cases and apply retroactively (see Matter of Maurer v State Emergency Mgt. Off., 196 Misc 2d 750 [Sup Ct, Albany County 2003], affd 13 AD3d 751 [3d Dept 2004]). As noted by the Third Department, aggrieved parties cannot sit on their existing rights pending the outcome on an earlier challenge brought by others. Moreover, the “governmental operations rule” is not implicated.