■ In the Matter of NEW YORK TELEPHONE COMPANY, Appellant-Respondent, v NASSAU COUNTY et al., Respondents-Appellants. (And Three Other Related Proceedings.) [699 NYS2d 616] —Mikoll, J. P. Cross appeals from a judgment of the Supreme Court (Teresi, J.), entered July 6, 1998 in Albany County, which, *inter alia*, (1) partially dismissed petitioners' applications, in proceeding Nos. 1, 2 and 4 pursuant to CPLR article 78, to review a determination of respondent Nassau County calculating the adjusted base proportions for the 1995-1996 tax year for certain properties in Nassau County, and (2) dismissed petitioners' application, in proceeding No. 3 pursuant to CPLR article 78, to declare that the State illegally directed them to recalculate said adjusted base proportions.

These appeals stem from the Nassau County respondents' alleged miscalculation of the share of 1995-1996 real property taxes to be borne by petitioners New York Telephone Company, Long Island Light Company and New York Water Services Corporation (hereinafter collectively referred to as the utility company petitioners or petitioners). In three separate CPLR article 78 proceedings (Nos. 1, 2 and 4) filed against the Nassau County respondents (hereinafter the County), the utility company petitioners sought refunds or adjustment of tax levies for subsequent years based on their claim that the County improperly calculated their tax rates and collected excessive taxes from them for the 1995-1996 tax year. In proceeding No. 3, the County commenced a declaratory judgment action against the State respondents (hereinafter the State) seeking a declaration that the County properly calculated petitioners' 1995-1996 tax rates and that the State had improperly required the County to correct same. Proceeding No. 3 was subsequently converted to a CPLR article 78 proceeding and joined with the other three proceedings in Supreme Court, Albany County. That court held, *inter alia*, that petitioners' taxes had been calculated incorrectly resulting in substantial overpayments to the County, that one quarter of the amounts overpaid by petitioners should be refunded in the form of tax credits over the next five years, and that the State was responsible for reimbursing the County one half of the amount of the tax credits to be given to petitioners. These cross appeals by all parties ensued.

Essential to understanding and resolving the questions presented is a brief description of Nassau County's real property taxation system. Nassau County is a "special assessing unit"

whose real property taxation is governed by RPTL article 18. As such, its real property is divided into four classes: classes one and two include all residential real property, class three includes utility property and class four includes commercial property. Property taxes imposed on each class of real property are a function of two components: the assessed value of the property and the tax rate applied to it. A special assessing unit may apply a different tax rate to each class of property, based on each class's "tax share". Class tax shares are determined by the ratio of the total assessed value of each class to the total assessed value of all property within the special assessing unit. Class tax shares are adjusted annually to reflect market changes and changes in the quantity of property within each class. The term "current base proportion" (hereinafter CBP) denotes the tax share of each class adjusted to take into account relative changes in market value. The term "adjusted base proportion" (hereinafter ABP) represents CBPs adjusted to reflect the addition of or removal of property from the assessment roll, or the addition or improvement to existing property, or physical or quantitative changes within a class. It is critical to note at this juncture that ABPs, by definition, measure only changes from year to year based on the same level of assessment in each year. It is equally important to note that petitioners do not challenge the amount of their real property tax assessments; the dispute focuses solely upon the tax rate applied to those assessments for the year in question.

As a "special assessing unit", Nassau County was responsible for determining the full and assessed value of all property in classes one, two and four. Until a change in law effective August 2, 1994 (RPTL 616), however, class three property was treated differently. Class three property consists of two types: (1) utility property located on privately owned property, and (2) utility property located on public property, denominated "special franchise property". Prior to the change in law, Nassau County was only responsible for determining the full and assessed value of the first type of utility property. As to the second type, "special franchise property", the State Office of Real Property Services (hereinafter the State Board) determined the final assessed value of such property and Nassau County entered this final value on its assessment roll.

Accordingly, in June 1994 (before the change effected by the new legislation), the State Board provided Nassau County with the final *assessed* value of all special franchise property in the County, the County entered these assessments on its rolls and utilized these assessments in preparing its 1994-1995 tax bills.

However, on August 2, 1994, the new legislation required that the special assessing unit (Nassau County), not the State Board, determine the final assessed value of special franchise property. The legislation required the special assessing unit to determine such final assessed value by applying to the *full* value of special franchise property, as certified by the State Board, "the uniform percentage at which all property in class three is assessed".

The State Board thereafter advised Nassau County that because of the change in law, the June 1994 assessed values prepared by the State Board and provided to Nassau County were not valid.* The State Board reminded the County of its new responsibility to determine assessed values of special franchise property on the basis of the full values thereof provided by the State Board. In December 1994, the State Board provided Nassau County with a set of "final special franchise full values for assessment rolls completed in 1994", and again reminded the County of its obligation to multiply these full values by the same percentage at which other class three property was assessed, and enter these products, or final assessed values, on its 1994 assessment rolls. Apparently, Nassau County did not do so, with the result that its 1994 assessment rolls, insofar as special franchise property was concerned, reflected final assessed values computed by the State Board.

In 1995, the State Board provided Nassau County with a list of special franchise full values for the 1995 assessment roll. The County used these figures to calculate the ABPs which, as previously noted, measure only the assessed value of physical or quantity changes from year to year within a given property class. Essential to an accurate calculation of the change which the ABPs are designed to measure is the comparison of "like to like" data.

Against this backdrop, we first take up the question of whether Supreme Court properly determined that the County had, in fact, miscalculated the ABPs attributable to utility company real property for the year 1995-1996 and that such error affected its computation of the tax rate and taxes ultimately levied on petitioners. We see little room for doubt that the County did so err. Notwithstanding the County's extended arguments to the contrary, the 1994 amendments to

---

* While the 1994 assessed values prepared by the State Board were valid for the issuance of the County's 1994-1995 tax bills, they were not valid for the prospective function of calculating ABPs in conjunction with the 1995 assessed values to be calculated by the County in accordance with the new legislation.

RPTL article 6 have no bearing on the matter in dispute, except to illuminate how and why the error occurred. Whereas the 1994 assessed values prepared by the State Board for the special franchise property at issue utilized a State equalization rate of between 4.5 and 5%, the 1995 assessed values, prepared by the County on the basis of full values provided by the State Board, utilized the County's equalization rate of 10%. Because the County did not utilize the set of full 1994 values provided by the State Board in December 1994 to replace the 1994 assessed values calculated by the State Board, when the County calculated the 1995 ABPs its calculation was not based on a comparison of property assessed at the same level in both years. Instead of measuring only the assessed value of physical or quantity changes, the resulting ABPs erroneously reflected a significant increase in assessed value of property which bore no relationship to the reality of the change between the two years. As a result of this error, petitioners' tax shares increased dramatically and excessive taxes were levied upon them in the approximate amount of $23 million.

We turn next to the County's contention that Supreme Court erred in determining that petitioners' proceedings were timely commenced. The County argues that petitioners' proceedings were in the nature of mandamus to review, and that the limitations period began to run on the date the challenged determination became final and binding against them (see, CPLR 217 [1]). The County further maintains that such date was June 15, 1995, when the ABPs, as originally calculated by the County, were certified as accurate by the State Board, enabling the County to proceed to calculate tax shares based upon them. Pointing out that nothing in RPTL article 18 requires notice to taxpayers of the calculation of ABPs, the County insists that the four-month period must be measured from June 15, 1995 and that petitioners' proceedings, commenced on February 8, 1996, were untimely. We disagree.

To the extent that the principal thrust of petitioners' applications was to obtain review and invalidation of the County's calculation of ABPs, upon which they contended their erroneous tax rate was based, their proceedings were in the nature of mandamus to review. To the extent they also sought an order compelling the County to recalculate the ABPs and hence their tax rate, and to refund their taxes, their proceedings were in the nature of mandamus to compel. In either case, the proceedings were timely commenced. Fundamentally, the period within which to commence a CPLR article 78 proceeding to review a determination does not begin to run until the aggrieved party

is aware of the determination and the fact that he or she is aggrieved by it (*see, New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 165-166; *Matter of Village of Westbury v Department of Transp.*, 75 NY2d 62, 72; *Matter of Biondo v New York State Bd. of Parole*, 60 NY2d 832, 834). Here, it is undisputed that petitioners had no indication of any problems with respect to their 1994-1995 taxes until October 15, 1995, the date on which the first of the erroneous bills were received. Even then, they lacked knowledge of the specific determination which resulted in the impact on their tax bills; their subsequent inquiries yielded the information upon which these proceedings are based.

Nor can we accept the County's efforts to analogize the calculation and certification of ABPs to the publication of an assessment roll, challenges to which must be made within four months of the roll's finalization (*see, Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg*, 78 NY2d 194, 205; *Matter of Averbach v Board of Assessors*, 176 AD2d 1151). There is no rational basis on which to draw a parallel between charging taxpayers with constructive notice of their assessments appearing on a publicized assessment role and charging them with constructive knowledge of internal errors in the calculation of tax rates to be applied to such assessments.

We now arrive at the principal claim raised by the utility petitioners on their cross appeal: that Supreme Court erred in failing to award them complete relief despite finding that the County's error resulted in their overpayment of approximately $23 million in property taxes for the 1994-1995 year. We agree with petitioners that in the face of Supreme Court's conclusion as to the nature of the error, the rectitude of which conclusion we herein affirm, the court abused its discretion in denying the requested relief and fashioning a remedy it perceived necessary to avoid fiscal chaos to the County.

As petitioners point out, at no time in the litigation between the utility petitioners and the County did the latter raise the claim of fiscal chaos or tender any evidence supporting such a conclusion. The record is therefore devoid of any basis on which to conclude that refunding the overpayments would result in so significant an economic impact on the County as to require this Court to consider alternate remedies in the public interest. To be emphasized is the fact that excessive taxes were improperly imposed on and collected from petitioners solely as a result of a discrete computational error. We therefore see no parallel between rectifying the consequences of this computa-

tional error and the drastic consequences flowing from invalidation of an entire assessment roll or nullification of a statute (*see, e.g., Foss v City of Rochester*, 65 NY2d 247; *Matter of Hellerstein v Assessor of Town of Islip*, 37 NY2d 1). Similarly unpersuasive is the County's claim that it should be insulated from the consequences of its error because the moneys erroneously collected have been expended, particularly in view of the fact that the County was on notice of the error in ample time to correct it before a substantial portion of the amount at issue was improperly collected.

Turning finally to the State's appeal, we agree that Supreme Court improperly adjudged it responsible for reimbursing the County for one half of the tax credits to be given to petitioners. As a starting point, we note that petitioners sued only the County and not the State. The State is a party to these proceedings only by virtue of the County's action seeking a declaration that its calculation of the ABPs was correct; the damages awarded by the court were not incidental to the relief sought by the County (*see*, CPLR 7806). The proper forum for any claim by the County for contribution or other money damages against the State is the Court of Claims.

While we thus hold that the County must refund petitioners the full amount of their overpayments, we believe it appropriate to afford the County the option of spreading these refunds over a period of five years, in which event petitioners would be additionally entitled to interest at the statutory rate.

Yesawich Jr., Peters, Spain and Mugglin, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied petitioners' application for full relief requested in the petitions; petitions granted and respondent Nassau County is permitted to refund the overpayments over a five-year period, with statutory interest; and, as so modified, affirmed.