OPINION OF THE COURT
Steven M. Jaeger, J.
Motion pursuant to CPLR 3212 by the defendants Thomas R. Suozzi, as Nassau County Executive, Harvey Levinson, as Chairman of the Nassau County Board of Assessors, Dennis L. Brown, Michael G. Norman, Michael M. Freeman, Thomas P Dejesu, as members of the County Board of Assessors, and the County of Nassau, for summary judgment dismissing the complaint insofar as interposed against them.
Cross motion by the plaintiff for an order: (1) amending the caption; and (2) for summary judgment pursuant to CPLR 3212.
Cross motion by the defendants the State of New York and Andrew M. Cuomo, as Governor of the State of New York, to dismiss the action pursuant to CPLR 3211 (a) (2) and (10), and/or for summary judgment dismissing the complaint insofar as interposed against them.
The plaintiffs own commercial properties located in the Port Washington Union Free School District (the District), which is situated in defendant County of Nassau (Nassau or the County). In 2006, the plaintiffs commenced the instant declaratory judgment action alleging, inter alia, that Real Property Tax Law article 18, is facially — and as applied to them — unconstitutional under the Due Process and Equal Protection Clauses of the Federal and New York State Constitutions (US Const, 14th amend, § 1; NY Const, art I, §§ 6, 11).
The plaintiffs’ complaint contains three, separately captioned causes of action. The first cause of action is predicated on the theory that, as applied to them, the formulas prescribed by article 18 for calculation of “base proportion” ratios — which are then used to allocate class tax shares within a special assessing unit — are outdated, arbitrary and thereby violative of their due process rights, since these proportions bear no rational relation to “actual” class share values within the District (complaint If If 44-46, 54-55). The second cause of action alleges that differences in legislatively enacted, increase “caps” — which limit, by *257 prescribed percentages, annual increases in class share, base proportion ratios — create an unconstitutional disparity between them and other, unspecified, but similarly situated taxpayers (complaint lili 47-51; see generally RPTL 1803-a [1] [c]-[w]).
Lastly, the third cause of action alleges that the defendants, collectively, have failed to satisfy the command of New York Constitution, article XVI, § 2, which directs the Legislature, inter alia, to “provide for the supervision, review and equalization of assessments” (complaint 1Í1Í 52-56).
The defendants, including the New York State defendants, have answered, denied the material allegations of the complaint and interposed various affirmative defenses.
In 2007, the County defendants moved to dismiss the complaint insofar as interposed against them, pursuant to CPLR 3211 (a) (7), which motion was denied in its entirety by order of this court (McCarty, III, J.) dated July 3, 2007 (see Supreme Assoc., LLC v Suozzi, 16 Misc 3d 1136[A], 2007 NY Slip Op 51714[U] [Sup Ct, Nassau County 2007]).
On appeal, the Appellate Division, Second Department, modified the court’s July 3, 2007 order. Specifically, in a brief memorandum decision, the Appellate Division dismissed both the due process (first) cause of action and the third cause of action based on alleged violations of New York Constitution, article XVI, § 2 (Supreme Assoc., LLC v Suozzi, 65 AD3d 1219, 1220 [2009]). However, and with the stated caveat that it was not “expressing any opinion” as to the plaintiffs’ ability to substantiate their allegations, the Court sustained the second cause of action grounded upon an equal protection theory of recovery (Supreme Assoc., LLC v Suozzi, 65 AD3d at 1221, citing 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979]).
RPTL article 18, as amended, creates two so-called “special assessing units” — New York City and Nassau County — in which commercial and residential properties are divided into four separate classes, each of which may then be permissibly and uniformly taxed based upon different fractional assessment percentages (see RPTL 1801 [a]; 1802 [1]; 102 [1]; see Matter of O’Shea v Board of Assessors of Nassau County, 8 NY3d 249, 254 [2007]; Matter of New York Tel. Co. v Nassau County, 267 AD2d 629, 630 [1999]). In general, and to ultimately arrive at an individual’s property tax obligations, an assessor must compute the total assessed value of all property within a stated class, and then compare that value to the total assessed value of all property within an assessing unit. The resulting ratio — or *258 so-called “base proportion,” as later adjusted — is then utilized to allocate each respective property class’s proportionate share of the overall annual tax levy (see generally Matter of New York Tel. Co. v Nassau County, supra, 267 AD2d 629, 630 [1999]).
In both Nassau County and New York City, however, a stated class’s proportionate share of all assessed value — its “base proportion” — is computed by reference to a highly complex statutory formula, which utilizes in the first instance, fixed or static, base-line, class share proportions derived from prior tax years; primarily — and as adjusted: (1) the 1981-1982 final assessment roll in Nassau County; and (2) the 1984 final roll in the City of New York (see generally O’Shea v Board of Assessors of Nassau County, supra; RPTL 1801 [f] [1], [2]).
By express legislative design, this computational methodology was intended, in part, to prevent dramatic increases in residential property taxes by “locking in” — subject to adjustment— specific class share relationships as they existed in the previously filed assessment rolls referenced above (see RPTL 1801 [f] [1], [2]; RPTL 1801, 1803, 1803-a, 1803-b; O’Shea v Board of Assessors of Nassau County, 8 NY3d at 254; Foss v City of Rochester, 65 NY2d 247, 251-253 [1985]).
The Court of Appeals has recently summarized the historical background and legislative genesis of article 18 by observing that RPTL article 18 was originally adopted in response to its landmark holding in Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1, 3 [1975]), which struck down, as improper, the previously widespread practice of utilizing fractional assessment valuation methodologies — a computational process at odds with the express requirement of former RPTL 306, which then directed that, inter alia, “all real property in New York State be assessed at full market value and taxed at a uniform rate within a single taxing jurisdiction” (O’Shea v Board of Assessors of Nassau County, 8 NY3d at 252-253; New York Tel. Co. v Nassau County, 1 NY3d 485, 491 [2004]; Foss v City of Rochester, supra; Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d at 3-4; see RPTL former 306).
As described by the Court of Appeals, the Hellerstein decision generated “widespread fear that, without ameliorative legislative action,” the elimination of fractional assessment “would shift ... a significant portion of the property tax burden from businesses to homeowners” (O’Shea v Board of Assessors of Nassau County, 8 NY3d at 253; New York Tel. Co. v Nassau County, 1 NY3d at 491; Matter of Colt Indus. v Finance Adm’r *259 of City of N.Y., 54 NY2d 533, 544 [1982]; Foss v City of Rochester, supra).
In response, and after several years of moratoria coupled with “fits and starts,” the Legislature in 1981 repealed former section 306, and enacted RPTL 305, which, in sum, authorized fractional assessments at a “uniform percentage of value.” (RPTL 305 [2].) At the same time, the Legislature added a new article 18, entitled, “Preservation of Class Share of Taxes . . . and Limitation on Increases of Assessments Therein,” whose purpose was, in part, “to maintain the stability of relative property class tax burdens” (O’Shea v Board of Assessors of Nassau County, 8 NY3d at 254, citing Budget Report on Bills, at 1, Bill Jacket, L 1981, ch 1057). To achieve this stated objective, the new enactment, among other things, “authorized a special assessing unit [in Nassau County] to fix class shares using the tax roll for the 1981-1982 levy, with leeway to increase or decrease shares in subsequent years up to five percent to accommodate changes in the roll or new construction” (O’Shea v Board of Assessors of Nassau County, 8 NY3d at 254).
The plaintiffs here allege, however, that article 18, as further amended in 1989, now “creates a completely arbitrary and capricious ratio for commercial properties” within the District (complaint 1HI 3-5). More specifically, the plaintiffs argue that since article 18 relies on “outdated,” inflexible valuation criteria — namely, fixed proportions “random[ly]” selected by legislative fiat from prior assessment rolls — the resulting base proportion calculations allegedly do not, and cannot, reflect the currently existing, “actual” assessed value of commercial property class within the District (complaint 1Í1Í 2-5, 31-33, 37-38).
Further, the plaintiffs assert that the gulf between the “actual ratio of assessed value” and the base proportions calculated pursuant to article 18 has been materially enlarged as an unintended by-product of the county-wide property reassessment, first performed in 2002-2003, and then annually thereafter, pursuant to a March 2000 “so-ordered” civil rights stipulation executed in Coleman v Seldin (181 Misc 2d 219, 238-240 [Sup Ct, Nassau County 1999, Winslow, J.]; stipulation H II, 7 [i], [ii]; Matter of O’Shea v Board of Assessors of Nassau County, 8 NY3d 249, 256-257 [2007]; complaint 1Í1I 2, 35-37; plaintiffs’ cross motion, exhibit A).
According to the plaintiffs, the “decoupling” of the statutory, base proportions from “actual” class property values, is cumulatively attributable to: (1) increasing residential — but *260 continually decreasing commercial — property values; (2) the annual, market-value based Coleman reassessments; and (3) Nassau’s prior, historical reliance upon archaic valuation methods for residential properties before Coleman — together with its failure to conduct reassessments between 1981 and 2002. The plaintiffs further contend that the collective impact of these aggravating factors has now terminally skewed the statutory base proportion allocations to the extent that — even as adjusted— they are now “out of whack with,” and no longer bear any rational relationship to, actual commercial class property shares existing in the District (complaint UU 4, 36, 38-39, 40-42; Murray reply aff U 5).
With respect to their equal protection theory, the plaintiffs further elaborate on this foundational theme by arguing that this irrational disconnect between “actual” and statutorily derived base proportion values does not exist in New York City, since the City’s assessed valuation allocations have always been more accurate to begin with. This is because, inter alia, annual assessments utilizing more market-sensitive valuation criteria have been historically performed there. As a consequence, the base proportion ratios computed in that jurisdiction — in contrast to those formulated in Nassau County — are still rationally related and/or functionally linked to the “actual” assessed value ratios in the assessing unit, thereby generating an unconstitutional disparity between the two, distinct taxing jurisdictions (complaint UU 3, 37-40; plaintiffs’ brief at 8-9; Murray reply aff UU 5, 7).
It bears noting that the thematic mainstay and centerpiece of the complaint is this base proportion “detachment” theory (e.g. complaint UU 2-5, 30-46, 54-56). The equal protection cause of action actually set forth in the complaint is founded on a far more elementally pleaded theory, i.e., that the base proportion “increase” cap applicable in Nassau County in 2006 was 1%— whereas in “other [unnamed] taxing authorities,” the same cap could be “adjusted by as much as 5%” thereby allegedly — and presumably by itself — creating a violation of the plaintiffs’ equal protection rights (complaint UU 47-51; see RPTL 1803-a [1]).
The County and New York State defendants now move and cross-move, respectively, for summary judgment dismissing the complaint and/or dismissal pursuant to CPLR 3211. The plaintiffs oppose the defendants’ applications and cross-move for, inter alia, summary judgment on their remaining equal protection claim. The defendants’ motions should be granted to the extent indicated below. The plaintiffs’ motion is denied.
*261 “The New York Equal Protection Clause (NY Const, art I, §11), modeled after its federal counterpart . . . , commands that ‘persons similarly situated should be treated alike’ ” (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 492 [2009]; Bower Assoc. v Town of Pleasant Val., 2 NY3d 617, 630-631 [2004]). However, “[u]nless a suspect class or fundamental right is involved . . . classifications that create distinctions between similarly-situated individuals will be upheld” if there is any reasonably conceivable state of facts that could provide a rational basis for the classification (Walton v New York State Dept. of Correctional Servs., 13 NY3d at 492; Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 289 [1999]; Trump v Chu, 65 NY2d 20, 25 [1985]; Tilles Inv. Co. v Gulotta, 288 AD2d 303, 305 [2001]).
A challenge to the validity of a tax classification implicates the lowest level of constitutional review — often described as “a paradigm of judicial restraint” (Port Jefferson Health Care Facility v Wing, 94 NY2d at 290; Trump v Chu, supra; see also People v Knox, 12 NY3d 60, 69 [2009]). Indeed, since the “Legislature has very nearly unconstrained authority in the design of taxing impositions” (Matter of Long Is. Light. Co. v State Tax Commn., 45 NY2d 529, 535 [1978]), this rational basis standard “is especially deferential in the context of classifications made by complex tax laws” (Port Jefferson Health Care Facility v Wing, 94 NY2d at 289; Trump v Chu, supra).
Significantly, the Equal Protection Clause does not prohibit State Legislatures from creating dual tax rates or “drawing lines that treat one class of individuals or entities differently from others” so long as the difference in treatment is not palpably arbitrary or invidiously discriminatory and the taxes imposed are uniform within a stated class (Port Jefferson Health Care Facility v Wing, 94 NY2d at 289; Trump v Chu, 65 NY2d 20, 25 [1985]; Colt Indus. v Finance Adm’r of City of N.Y., supra; Tilles Inv. Co. v Gulotta, supra).
The presumption of constitutionality which attaches to a taxing enactment is an exceedingly heavy one, and can “be overcome only by the most explicit demonstration” negating “every conceivable basis which might support [the challenged enactment]” (Trump v Chu, 65 NY2d at 25, quoting Madden v Kentucky, 309 US 83, 88 [1940]) “whether or not [that] basis has a foundation in the record” (Affronti v Crosson, 95 NY2d 713, 719 [2001]).
With these principles in mind, the court finds that the plaintiffs have failed to establish an actionable violation of their *262 constitutional, equal protection rights. Preliminarily, to the extent that the plaintiffs are arguing that the purported disconnect between “actual” assessed class value shares, and the current, statutory base proportion formulas alone creates any sort of constitutional infirmity (cf. Murray reply aff 1111 5, 7; complaint 1111 45-46), that claim (expressly pleaded here as the first, “due process” cause of action) has already been rejected by the Appellate Division — notwithstanding the allegedly aggravating impact of the Coleman reassessments (Supreme Assoc., LLC v Suozzi, 65 AD3d at 1220). Moreover, a similar claim predicated upon the fixed nature of article 18’s base proportion formulas — and its inability to correlate with “actual,” proportionately decreasing commercial class share values — was made and rejected by the Appellate Division in Tilles Inv. Co. v Gulotta (288 AD2d 303, 304-305 [2001], supra; e.g. Tilles complaint 1iH 52-62).
In any event, the article 18 base proportion formulas enacted by the Legislature were purposely crafted so as to stabilize relative property class tax burdens by perpetuating certain legislatively designated class share proportions — irrespective of whether these shares accurately reflected current or “actual” assessed market values in a specific assessing unit (RPTL 1801 [f] [1], [2]; O’Shea v Board of Assessors of Nassau County, 8 NY3d at 254). Similarly, the related statutory adjustment provisions and the annually applicable increase “caps” (enacted separately for both New York City and Nassau County), rationally further this legislative end by authorizing relatively limited deviations from the preexisting base proportion allocations selected by the Legislature, i.e., they also serve to perpetuate, within stated limits, the minimum class share proportions preserved by article 18.
The assertion that there is a growing disconnect between actual class values and the statutory base proportion allocation — even if true — does not, as the Appellate Division concluded, establish “that any tax statute contained in RPTL article 18 is ‘so arbitrary as to compel the conclusion that [article 18] . . . involve [s] [an unconstitutional] exertion of the taxing power’ ” for due process purposes (Supreme Assoc., LLC v Suozzi, 65 AD3d at 1220, quoting A. Magnano Co. v Hamilton, 292 US 40, 44 [1934]).
Herein, applying the highly deferential, “paradigm of restraint” standard of judicial review {Trump v Chu, supra), the court agrees that the plaintiffs have failed to carry their very *263 heavy burden establishing a violation of their equal protection rights.
The plaintiffs have not shown that article 18, either facially or as applied to them, creates invidious disparities among similarly situated taxpayers owning commercial property within the same taxing unit, i.e, the County of Nassau (see Matter of Treichler v Niagara-Wheatfield Cent. School Dist., 184 AD2d 1, 7 [1992]). It is notable that in Tilles Inv. Co. v Gulotta (supra) the Second Department previously considered the same statutory scheme and concluded, inter alia, that there is a rational basis for the special assessing units and that “Nassau County treats similarly-situated taxpayers uniformly for the purpose of imposing county taxes” (Tilles Inv. Co. v Gulotta, supra, 288 AD2d 303, 305 [2001]; see also Matter of Colt Indus. v Finance Adm’r of City of N.Y., 54 NY2d 533, 544-545 [1982]).
Nor have the plaintiffs established the existence of improper class discrimination by relying on the base proportions formulated in the City of New York. As previously noted, the Appellate Division has effectively disagreed with the plaintiffs’ base proportion, due process theory (Supreme Assoc., LLC v Suozzi, 65 AD3d at 1220; complaint ¶¶ 2-5, 44-46). The plaintiffs’ equal protection claim is essentially an extended permutation of that same basic theory; namely, that the plaintiffs are entitled to an equal protection recovery because the statutorily derived, base proportion — as applied to them — is irrational and therefore incapable of reflecting “actual” class values in Nassau County, whereas in New York City that same negative result allegedly does not occur (complaint 1T1T 44-46).
The plaintiffs have not, however, shown beyond any reasonably conceivable doubt that they are entitled to uniformity in the ultimate impact of base proportion allocations computed and applied in different taxing units (Port Jefferson Health Care Facility v Wing, 94 NY2d at 290). Nor does the record substantiate the plaintiffs’ assumption that the plaintiffs and New York City commercial class taxpayers are even similarly situated for the purposes of equal protection analysis (Matter of Treichler v Niagara-Wheatfield Cent. School Dist., supra, 184 AD2d 1, 7 [1992]; Tilles Inv. Co. v Gulotta, supra, 288 AD2d 303, 304-305 [2001]). In any event, it is settled that “ ‘[e]qual protection does not require territorial uniformity of law within a State’ ” and in fact, “ ‘[i]t has long been the rule that the State Legislatures may make such geographic distinctions without denying any person equal protection of the laws’ ” (Colt Indus. v Finance *264 Adm’r of City of N.Y., 54 NY2d at 544 [citations omitted]; see also Town of Tonawanda v Ayler, 68 NY2d 836, 838 [1986]; Matter of Tolub v Evans, 58 NY2d 1, 8 [1982]).
Further, and as prescribed by article 18, the respective base proportion computations in each taxing unit are initially predicated on different, base-line assessment years (RPTL 1801 [f] [1], [2]; 1803-a), and then separately applied and capped within those two distinct units. As the plaintiffs themselves argue, prior to the enactment of article 18, and thereafter, Nassau and the City of New York have historically adopted, within their respective borders, different assessment and/or valuation methodologies and philosophies — facts presumably known to the Legislature when it adopted article 18 (see O’Shea v Board of Assessors of Nassau County, 8 NY3d at 254). Upon these circumstances, the fact that the statutory criteria as applied in New York City may yield base proportions more reflective of “actual” class shares than in Nassau County does not create invidious discrimination violative of the plaintiffs’ equal protection rights (cf. Heimbach v State of New York, 59 NY2d 891, 893 [1983]).
Significantly, “fairness and equity are not the principal criteria against which the validity of tax statutes is to be determined” (Matter of Long Is. Light. Co. v State Tax Commn., 45 NY2d 529, 535 [1978]). Nor does “equal protection . . . require that all classifications be made with mathematical precision” or nicety (Gribetz v Evans, 113 AD2d 376, 384 [1985]; see Matter of Allen v Howe, 84 NY2d 665, 673 [1994]). Indeed, “[e]ven a ‘flagrant unevenness’ in application of the tax will not prevent the statute from passing constitutional muster” (Heimbach v State of New York, 59 NY2d at 893).
The plaintiffs’ reliance upon certain externally occurring events such as, among other things, shifting or evolving property values trends and/or the settlement of a privately instituted civil rights lawsuit (events which have impacted the class of commercial taxpayers within the County in the same fashion) is similarly unpersuasive (Heimbach v State of New York, 59 NY2d at 893). In any event, the annual, Coleman-generated reassessments have not negated the statutory scheme’s stated function, i.e., to preserve relative class proportions as reflected in the legislatively selected prior, base-line assessment rolls (O’Shea v Board of Assessors of Nassau County, 8 NY3d at 253-254).
In sum, whether the constellation of the events identified by the plaintiffs here warrants modification or adjustment to the *265 currently existing statutory scheme is a complex policy matter best addressed by the Legislature (Diamond v Cuomo, 70 NY2d 338, 342 [1987]; Maresca v Cuomo, 64 NY2d 242, 253 [1984]; see Port Jefferson Health Care Facility v Wing, supra). “It is not within the province of the judiciary to balance the advisability of a lawfully implemented public policy against the hardship or illogic it may be said to impose” (Maresca v Cuomo, 64 NY2d at 253).
The Court of Appeals holding in Foss v City of Rochester (65 NY2d 247 [1985]), is inapposite since, inter alia, the unconstitutional disparity discerned there occurred within a single taxing unit, i.e., the County of Monroe, and turned on the particular manner in which tax burdens were levied by local assessing units within that County (Foss v City of Rochester at 257-258; see Treichler v Niagara-Wheatfield Cent. School Dist, 184 AD2d at 7 [“The constitutional invalidity described in Foss has no application to a comparison of the relative tax burdens between taxing authorities”]). Plaintiffs and other commercial property owners in Nassau County are not “similarly situated” with commercial property owners in New York City.
Lastly, while the Appellate Division previously sustained the plaintiffs’ equal protection theory in response to the County’s original CPLR 3211 (a) (7) motion, that holding is not binding with respect to a subsequently noticed application for summary judgment (see generally Thompson v Lamprecht Transp., 39 AD3d 846 [2007]; Mobarak v Mowad, 55 AD3d 693 [2008]).
The court has considered the plaintiffs’ remaining contentions and concludes that they are insufficient to defeat the defendants’ motions for summary judgment and/or to dismiss the complaint.
Accordingly, it is, ordered that the motion and cross motion by the defendants for, inter alia, summary judgment dismissing the complaint insofar as interposed against them is granted; and it is further, ordered that the cross motion by the plaintiffs for, inter alia, summary judgment on their second cause of action and to amend the caption is denied; and it is further, ordered and declared, that Real Property Tax Law article 18 is neither facially, nor as applied to the plaintiffs, unconstitutional under the equal protection provisions of the New York State and Federal Constitutions.