Tax Equity Now NY LLC v City of New York (2020 NY Slip Op 01401)





Tax Equity Now NY LLC v City of New York


2020 NY Slip Op 01401


Decided on February 27, 2020


Appellate Division, First Department


Kern, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 27, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische,J.P.
Barbara R. Kapnick
Cynthia S. Kern
Peter H. Moulton, JJ.


&em;

[*1]Tax Equity Now NY LLC, Plaintiff-Respondent-Appellant,
v
City of New York, et al., Defendants-Appellants, [*2]State of New York, et al., Defendants-Appellants-Respondents. Citizen Budget Commission, National Association for the Advancement of Colored People New York State Conference and Latino Justice PRLDEF, Amici Curiae.



Plaintiff appeals from the order of the Supreme Court, New York County (Gerald Lebovits, J.), entered September 25, 2018, which denied the motion of defendants City of New York and New York City Department of Finance to dismiss the complaint as against them, and granted in part, and denied in part, the motion of defendants State of New York and New York Office of Real Property Tax Services to dismiss the complaint as against them.




Zachary W. Carter, Corporation Counsel, New York (Joshua Sivin, Andrea M. Chan, Kevin R. Harkins, Neil Schaier and Yu Wen of counsel), for appellants.
Letitia James, Attorney General, New York (Seth M. Rokosky and Steven C. Wu of counsel), for appellants-respondents.
Latham & Watkins LLP, New York (James E. Brandt and Jonathan Lippman of counsel), for respondent-appellant.
Cadwalader, Wickersham & Taft LLP, NY (Jason M. Halper and Ellen V. Holloman of counsel), for Citizen Budget Commission, amicus curiae.
Mololamken LLP, New York (Jessica Ortiz of counsel), for National Association for the Advancement of Colored People New York State Conference, amicus curiae.
Friedman Kaplan Seiler & Adelman LLP, New York (Eric Seiler, Ricardo Solano Jr. of counsel), Juan Cartagena, New York, and Jackson Chin, New York, for Latino Justice PRLDEF, amicus curiae.



KERN, J.


In this action, plaintiff seeks a declaration that the New York State property tax system, as enacted and as applied by New York State, the New York Office of Real Property Tax Services (State defendants), New York City and the New York City Department of Finance (City defendants), violates state and federal constitutional and statutory mandates that require that property taxes be imposed uniformly within each property class and reflect a fair and realistic value of the property involved. Plaintiff also seeks a permanent injunction against the City's alleged unlawful and discriminatory exaction of property taxes. The City and State defendants separately move to dismiss this action on the grounds that plaintiff lacks standing to challenge [*3]the property tax system and that plaintiff's complaint fails to state a claim. As will be explained more fully below, this Court grants the motions to dismiss this action in their entirety.
We start with a discussion of the New York State property tax system, as it is applied in New York City. In 1981, the New York State legislature enacted article 18 of the Real Property Tax Law (RPTL) in an effort to reform the property tax system in response to the Court of Appeals' decision in Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1 [1975])[FN1]. As part of that reform effort, article 18 established four classes of real property in New York City, which can be summarized as follows:
(1) Class One, primarily one-, two-, and three-family residential real property;
(2) Class Two, all other residential property, including condominiums, cooperatives and rental buildings;
(3) Class Three, utility real property;
(4) Class Four, all other real property (see RPTL 1801[a], 1802[1]).
Article 18 allocates the total property tax burden of New York City among the four statutory classes and preserves the relative tax burden of each statutory class over time. To this end, RPTL 1803-a sets forth a formula for determining the proportion of all real property taxes owed by each statutory class (see RPTL 1801[f] and 1803-a[1][b]) and caps the annual amount by which the class share for any particular class may increase relative to the total property tax burden [FN2]. Article 18 also provides yearly caps on the amount by which the assessed value of certain individual properties may be increased. Assessed values on Class One properties may not increase by more than 6% in one year or 20% over any five-year period (RPTL 1805[1]). Assessed values for Class Two properties that have fewer than 11 residential units may not increase by more than 8% in one year or 30% over any five-year period (RPTL 1805[2]). Increases in assessment values for Class Two properties with 11 or more units are not capped but must be phased in over a five-year period (RPTL 1805[3]).
The New York City Department of Finance (DOF) assesses the taxable value of a parcel of real property by multiplying its market value by the fractional assessment rate applied to that parcel's property class, with Class One properties assessed at 6% of their market value and all other classes of property assessed at 45% of their market value. Once the taxable value is determined, and after the application of any pertinent assessment caps, the DOF applies the tax rate applicable to that class of property, a proportional rate determined based upon each class's share of the tax burden, in accordance with RPTL 1803-a.
The tax assessment for any particular property may also be subject to adjustment by an abatement and/or exemption. For example, condominium and cooperative owners in the City may be eligible for abatements under the Cooperative and Condominium Property Tax Abatement Program (RPTL 467-a), with the amount of the abatement, which varies from 17.5% to 28.1%, dependent on the average assessed value of units in the building.
Condominium and cooperative owners also benefit from RPTL 581, which provides that "real property owned or leased by a cooperative corporation or on a condominium basis shall be [*4]assessed . . . at a sum not exceeding the assessment which would be placed upon such parcel were the parcel not owned or leased by a cooperative corporation or on a condominium basis" (RPTL 581[a][1]). As a result, the DOF values condominium and cooperative buildings as if they were rental properties, using buildings of comparable age, size, location, and unit number, and such buildings' income and expenses, in order to establish their value.
Turning to this action, this Court finds that plaintiff has standing to challenge the property tax system. Plaintiff, an association of owners and renters of real property who are allegedly harmed by the New York City property tax system, adequately pleads facts tending to show that one or more of its members would have standing to sue, the interests it asserts are germane to its purposes so as to satisfy the Court that it is an appropriate representative and neither the asserted claim nor the relief requires the participation of the individual members (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]). Moreover, plaintiff's allegations and affidavits demonstrate that its members suffered an injury in fact (compare Robinson v City of New York, 143 AD3d 641 [1st Dept 2016]).
Construing the pleadings liberally, accepting all the facts alleged in the complaint as true and according plaintiff the benefit of every possible favorable inference (see generally Leon v Martinez, 84 NY2d 83, 87—88 [1994]), the complaint fails to state a cause of action against any of the defendants. Each theory of liability proffered in plaintiff's complaint is hereinafter considered.
Plaintiff's complaint includes several causes of action containing allegations that defendants violated the Federal and State Equal Protection Clauses by assessing and taxing similarly situated properties differently within and across statutory classes. Each cause of action will be addressed in turn. However, we start with a set of bedrock legal principles that will guide our analysis.
The State Equal Protection Clause is no broader in coverage than its federal counterpart (see Matter of Walsh v Katz, 17 NY3d 336, 343 [2011]). Neither the Federal nor the State Constitution "prohibit[s] dual tax rates or require[s] that all taxpayers be treated the same" (Foss v City of Rochester, 65 NY2d 247, 256 [1985]). All that they require is "that those similarly situated be treated uniformly. Thus, the creation of different classes for purposes of taxation is permissible as long as the classification is reasonable and the taxes imposed are uniform within the class" (id.). Put another way, the legislature may treat one class differently from others "unless the difference in treatment is palpably arbitrary or amounts to an invidious discrimination" (Trump v Chu, 65 NY2d 20, 25 [1985] [internal quotation marks omitted]).
"This standard is especially deferential in the context of classifications made by complex tax laws" (Nordlinger v Hahn, 505 US 1, 11 [1992]). Even dramatic disparities in property taxes paid by persons who own otherwise similar property are likely to survive review (id. at 6-7). "Where taxation is concerned and no specific[] right, apart from equal protection, is imperiled,[] States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation" (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 359 [1973]).
"The scope of our review is narrow. Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose" (Trump, 65 NY2d at 25).
With these principles in mind, plaintiff's third and fourth causes of action, which allege that the City defendants' application of assessment caps to Class One properties violates the Federal and State Equal Protection Clauses because it results in properties within that class being taxed at different rates, fail to state a claim. Plaintiff's argument is that homeowners with homes that have rapidly appreciated in value disproportionately benefit from the assessment caps provided for in RPTL 1805(1). As noted earlier, those assessment caps prevent assessed values [*5]on Class One properties from increasing by more than 6% in one year or 20% over any five-year period. As a result of the caps, properties that have appreciated rapidly are arguably underassessed relative to other Class One properties that have appreciated more gradually.
Even though plaintiff is correct that the statutorily imposed assessment caps provided for in RPTL 1805(1) have a different effect on otherwise similarly situated Class One properties based on how much these properties have appreciated, such different effect is not actionable here because the legislature has a rational basis for making a distinction between those properties which appreciate rapidly and those which appreciate more gradually. The legislature adopted the assessment caps provided for in RPTL 1805(1) to protect homeowners from sudden dramatic tax increases which would make continued home ownership more burdensome and unaffordable for many homeowners. This distinction is not palpably arbitrary, does not amount to invidious discrimination and is rationally related to the achievement of a legitimate governmental purpose (Trump, 65 NY2d at 25). Moreover, as the Court of Appeals has held, the Federal and State Equal Protection Clauses "do not prohibit dual tax rates or require that all taxpayers be treated the same. They require only that those similarly situated be treated uniformly" (Foss v City of Rochester, 65 NY2d at 256 [emphasis added]). In the present case, the application of assessment caps contained in RPTL 1805 are applied uniformly to all Class One properties, even though not all taxpayers receive the same benefit from them, and thus they do not violate the Federal and State Equal Protection Clauses. The fact that the assessment caps may have "created dramatic disparities in the taxes paid by persons owning similar pieces of property" does not violate the Equal Protection Clause (Nordlinger, 505 US at 6).
Plaintiff's argument that Foss compels a different result is unavailing. In Foss, two assessing units within the same county were each determining the value of real property subjectively and were using different assessment ratios to calculate the assessed value of particular parcels of property (65 NY2d at 254). The Court held that because otherwise similarly situated properties were being taxed differently depending solely on where they were geographically located within the county, those properties were not being treated uniformly in violation of the Federal and State Equal Protection Clauses. Unlike in Foss, here, the City is one assessing unit and applies one uniform assessment ratio to every property within a class. Indeed, Foss contemplated that achieving tax uniformity would be "relatively simple when dealing with a tax levied by one assessing unit" (65 NY2d at 254). For that reason, plaintiff's reliance on Foss is misplaced.
Plaintiff's seventh and eighth causes of action, which allege that defendants' enactment and application of RPTL 581, requiring condominiums and cooperatives to be assessed as if they were rental properties, and RPTL 467-a, providing tax abatements to owners of Class Two condominiums and cooperatives, violate the Federal and State Equal Protection Clauses by treating cooperatives and condominiums favorably compared to rental buildings, also fail to state viable claims.
RPTL 581 requires that condominiums and cooperatives be assessed as if they are rental properties (RPTL 581[1][a]). In accordance with that provision, the city values pre-1974 condominium and cooperative buildings by comparing them to comparable rental buildings of a similar age, size and location, some of which are rent-regulated. It then imputes the rental income from the comparable rental buildings to the subject condominium or cooperative. The resulting average rental income will include both income from rent-regulated units and market-rate units and will form the basis for the building's assessed value. Plaintiff contends that this application of RPTL 581 undervalues pre-1974 condominiums and cooperatives, because they are assessed as if they are rent-regulated even though they are not rent-regulated, in violation of the Federal and State Equal Protection Clauses.
Plaintiff's argument that the enactment and application of RPTL 581 violates equal protection fails to state a claim. First, RPTL 581 does not create different classes for purposes of taxation, which is a prerequisite for review on equal protection grounds. Rather, it treats pre-[*6]1974 rental, condominium and cooperative buildings as similarly situated and defendants have assessed them accordingly. Absent an allegation that RPTL 581 discriminates between similarly situated taxpayers, plaintiff cannot plead a violation of the Federal and State Equal Protection Clauses. Second, even if an equal protection analysis does apply, RPTL 581 and its application do not violate the Federal or State Equal Protection Clauses as RPTL 581 has a rational basis and is not otherwise palpably arbitrary or a form of invidious discrimination (see Trump, 65 NY2d at 25). RPTL 581 was adopted to "insure that owners of condominium and cooperative properties would be taxed fairly compared to rental properties held in single ownership and not penalized because of the type of ownership involved" (Matter of D.S. Alamo Assoc. v Commissioner of Fin. of City of N.Y., 71 NY2d 340, 347 [1988]). The essential purposes of RPTL 581 are to encourage home ownership and to place homeowners on a level playing field with owners of rental buildings for taxation purposes. The decision to treat pre-1974 rental, condominium, and cooperative buildings similarly is rationally related to that end. The City defendants' application of RPTL 581 to value condominiums and cooperatives in comparison to rental buildings using an income-related approach is consistent with the RPTL 581 mandate that condominium and cooperatives be treated as rental buildings [FN3]. Accordingly, plaintiff's allegation that the defendants' application of RPTL 581 violates equal protection by undervaluing condominiums and cooperatives relative to rental buildings fails to state a claim.
Plaintiff's other theory of liability alleged in its seventh and eighth causes of action is that RPTL 467-a, which provides temporary tax abatements to owners of three or fewer cooperative or condominium units, violates equal protection because it results in owners of Class Two condominiums and cooperatives being taxed at lower rates than owners of Class Two rental buildings. The RPTL 467-a tax abatements classify owners of three or fewer cooperative or condominium units separately from other Class Two property owners. This distinction is permissible and does not violate the Federal and State Equal Protection Clauses because it is not palpably arbitrary, does not amount to invidious discrimination and is rationally related to the achievement of a legitimate governmental purpose. The abatements serve to further a legitimate governmental purpose, which is to resolve an apparent inequity where condominium and cooperative owners pay far higher taxes compared to owners of comparably priced family homes. For that reason, plaintiff's allegations contained in its seventh and eighth causes of action fail to state a claim.
Plaintiff's eleventh and twelfth causes of action, which allege that defendants violated the Federal and State Equal Protection Clauses by arbitrarily apportioning tax burdens to each statutory class without relation to the total market value of the properties within each class, also fail to state a claim. Plaintiff argues that the apportionment of tax burdens among the classes violates the Equal Protection Clauses because Class One properties account for 47% of the total property value within New York City but generate only 15% of the city's property taxes whereas Class Two properties account for 24% of the total value but generate 37% of the taxes. The primary reason that an interclass disparity in the tax burden exists is the enactment of RPTL article 18 and, more specifically, the application of RPTL 1803 and 1803-a. As previously discussed, RPTL article 18 created four classes of properties (see RPTL 1802[1]) as part of a complex statutory scheme in response to the Court of Appeals' decision in Matter of Hellerstein v [*7]Assessor of Town of Islip (37 NY2d 1 [1975]). RPTL 1803 requires municipalities to determine the class share for each class of property, which is the proportion of the total tax burden borne by each class (see RPTL 1801[f] and 1803)[FN4]. RPTL 1803-a requires the annual adjustment of each class share based upon, for example, the addition of new property within a class to the assessment rolls, and caps the annual amount by which each class share of the total property tax burden may grow (see RPTL 1803-a[5] and 1803[2]). The requirements of RPTL 1803 and 1803-a were intended to "maintain the stability of relative property class tax burdens" (see O'Shea, 8 NY3d at 254 [internal quotation marks ommitted]) "by locking in' — subject to adjustment — specific class share relationships as they existed" in the prior years' assessment rolls (Supreme Assoc., LLC v Suozzi, 34 Misc 3d 255, 258 [Sup Ct, Nassau County 2011]). The cap on each class share of the tax burden, like the assessment caps provided for in RPTL 1805, has a rational basis that serves the legislature's aforementioned objective and is not otherwise palpably arbitrary or a form of invidious discrimination. Accordingly, plaintiff's allegation that RPTL article 18, and the application thereof, apportion tax burdens across statutory classes in a manner that violates the Federal and State Equal Protection Clauses fails to state a claim.
For the foregoing reasons, and in view of the deference we afford the legislature in the context of classifications made by complex tax laws, plaintiff's allegations in its third, fourth, seventh, eighth, eleventh and twelfth causes of action do not state a valid equal protection claim. In reaching this conclusion, we recognize that the property tax system does, in many respects, result in unfairness. However, as previously stated, property tax systems that result in "dramatic disparities in the taxes paid by persons owning similar pieces of property" are not, for that reason, violative of equal protection (Nordlinger, 505 US at 6). As the Court of Appeals has aptly stated, "[i]t is not within the province of the judiciary to balance the advisability of a lawfully implemented public policy against the hardship or illogic it may be said to impose" (Maresca v Cuomo, 64 NY2d 242, 253 [1984]). It is up to the legislature to implement a fair and equitable property tax system. The grievances plaintiff raises are more appropriately addressed by that branch of government.
We now shift our focus from equal protection to plaintiff's first and fifth causes of action, which allege that the City and State defendants' application of the property tax system to Class One and Class Two properties violates the requirement of the New York State Constitution, article XVI, § 2 that assessments be equalized for the purposes of taxation. Plaintiff argues that defendants have failed to equalize assessments because properties that are of a similar market value are often assessed at different values. For the reasons that follow, plaintiff's complaint fails to state a claim.
Plaintiff interprets article XVI, § 2 of the New York State Constitution, which requires the "legislature [to] provide for the supervision, review and equalization of assessments for purposes of taxation," to mandate that all properties within each property class be assessed at the same percentage of their market value. There is no basis for such interpretation. Article XVI, § 2 of the New York State Constitution does not require that all assessments be equal in the literal sense, but rather requires the State to have a process in place for the adjustment and review of assessments of individual taxpayers to ensure that each property owner generally bears a fair share of the cost of government in relation to every other property owner in a taxing district (see Matter of Fifth Ave. Off. Ctr. Co. v City of Mount Vernon, 89 NY2d 735, 740 [1997]; Foss, 65 NY2d at 254-255). The State defendants have met their constitutional requirement to provide for the equalization of assessments for taxation purposes by setting forth procedures for administrative and judicial review of property assessments in RPTL articles 5, 7, 12, and 18, among others. Moreover, to the extent plaintiff argues that the City defendants, separate from the [*8]State defendants, have failed to equalize assessments, this section of the New York State Constitution is clearly directed at the state legislature and does not in any way apply to the City defendants. For those reasons, plaintiff's first and fifth causes of action fail to state a claim against both the State and City defendants.[FN5]
We now move on to plaintiff's second and sixth causes of action, which allege that defendants violated RPTL 305. Plaintiff's second cause of action, which alleges that the City defendants' application of the assessment caps provided for in RPTL 1805 to Class One properties violates RPTL 305(2) because it results in the taxation of similar parcels of property within that class at different percentages of market value, fails to state a viable claim. RPTL 305(2) requires "[a]ll real property in each assessing unit [to be] assessed at a uniform percentage of value" (emphasis added). As already discussed, RPTL 1805(1) caps the annual growth in assessed value of Class One properties at 6% in one year or 20% over any five-year period. RPTL 305 and 1805 were enacted during the same legislative session as part of a complex statutory scheme to reform the property tax system. Accordingly, those statutes must be read together and applied harmoniously (see Alweis v Evans, 69 NY2d 199, 204-205 [1987]; Tilles Inv. Co., 288 AD2d at 306). It is undisputed that the effect of the application of the assessment caps is that, over time, certain properties that appreciate in value more rapidly are assessed at a lesser percentage of their market value compared to properties that appreciate more gradually. When the legislature adopted RPTL 305(2) and the assessment caps provided for in RPTL 1805, it knew that, over time, those assessment caps were going to necessarily create disparities. Thus, the legislature could not have intended the disparities caused by the RPTL 1805 assessment caps to result in a violation of the requirement contained in RPTL 305(2) that "[a]ll real property in each assessing unit [be] assessed at a uniform percentage of value." For that reason, plaintiff's allegation that the enactment or application of RPTL 1805 violates RPTL 305(2) fails to state a claim.
Plaintiff's argument that Matter of O'Shea v Board of Assessors of Nassau County (8 NY3d 249, 258 [2007]) obligates the City defendants to reduce their assessment ratio in order for its assessments of Class One properties to comply with RPTL 305(2) is without basis. In O'Shea, Nassau County entered into a stipulation wherein it agreed to undertake a countywide reassessment of its real property and that no more than one-half of one percent of residential property would be subject to assessment caps. The Court found that the county's only option for complying with the stipulation was to reduce its assessment ratio so that the assessment caps would not apply to more than one-half of one percent of residential property. However, the Court did not hold that the county was required to reduce its assessment ratio to comply with RPTL 305(2). Here, the City defendants have not entered into any stipulation or otherwise agreed to limit the number of properties that are subject to assessment caps. Thus, plaintiff's reliance on O'Shea is misplaced.
Plaintiff's sixth cause of action alleges that the State defendants' enactment of, and the City defendants' application of, RPTL 467-a, 581 and 1805 to Class Two properties violate RPTL 305(2) because Class Two properties are taxed differently depending on the use of the property and the form in which it is owned. This cause of action fails to state a claim for essentially the same reason that the second cause of action fails. Those statutes were all enacted by the legislature as part of a complex statutory scheme to reform the property tax system and must be applied harmoniously. The legislature could not have intended the application of RPTL 467-a, 581 or 1805 to violate RPTL 305(2).
We now consider plaintiff's ninth and tenth causes of action, which allege violations of its due process rights. Plaintiff has failed to state a cause of action under either the Federal or State Due Process Clauses because it has not adequately alleged that defendants have acted in excess of their taxing power in enacting and applying the property tax system.
"The Legislature has nearly unconstrained authority in the design of taxing measures unless they are utterly unreasonable or arbitrary" (Ames Volkswagen v State Tax Commn., 47 NY2d 345, 349 [1979]). A taxing statute, or the application thereof, violates the Federal and State Due Process Clauses "only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power" (A. Magnano Co. v Hamilton, 292 US 40, 44 [1934]). The statutes effectuating the property tax system which are at issue in this matter are not arbitrary but are instead grounded in legislative policy determinations to, for example, protect homeowners from sudden spikes in taxes. Particularly in view of the legislature's broad authority in designing taxing measures, it cannot be said that those statutes or their application are so arbitrary as to be violative of due process.
Plaintiff's thirteenth cause of action alleges that defendants violated RPTL 1802(1), which established four classes of real property in New York City for assessment and taxation purposes, by creating de facto subclasses within Class One and Class Two depending on a property's age, form and location. The RPTL, however, does not limit the number of permissible classifications to those four contained in RPTL 1802(1), and thus plaintiff's allegation fails to state a claim.
Plaintiff interprets RPTL 1802(1) to mean that four — and only four — property classes can exist and that, therefore, RPTL 1805 and 467-a impermissibly create de facto subclasses. However, the classifications contained in RPTL 1802(2) are not the only classifications that exist in the RPTL. Indeed, RPTL article 4, among others, creates a number of classifications for properties depending on whether, for example, they are owned by a veteran (RPTL 458), or are opera houses (RPTL 426), or are providing affordable housing (RPTL 421-a). These classifications complement, rather than violate, RPTL 1802(1) and the four statutory classes provided therein, and may exist so long as they are rationally related to a legitimate governmental purpose. Accordingly, plaintiff's allegation that defendants violated RPTL 1802(1) by creating de facto subclasses within Class One and Class Two depending on a property's age, form and location fails to state a claim.
Plaintiff's final three causes of action contain allegations that defendants violated the Fair Housing Act (FHA) by applying the property tax system in a manner that assesses and taxes properties in majority-minority communities at disproportionately higher rates compared to those in majority-white communities. The FHA promotes "fair housing throughout the United States" by prohibiting any practice that "make[s] unavailable or den[ies] a dwelling to any person because of race" or otherwise "discriminate[s] against any person in the terms, conditions, or privileges of sale or rental of a dwelling" (42 USC §§ 3601, 3604[a], [b]). To that end, the FHA prohibits both intentional discrimination and practices that disparately impact a protected group (see Texas Dept. of Hous. and Community Affairs v Inclusive Communities Project, Inc., __ US __, 135 S Ct 2507, 2519-2520 [2015]). As will be discussed, plaintiff's allegations in its fourteenth, fifteenth and sixteenth causes of action do not state an FHA claim.
We first analyze plaintiff's allegations that the application of the property tax system has a disparate impact on minorities by making housing unavailable in majority-minority communities and perpetuating segregation in New York City neighborhoods. In order to maintain a disparate impact claim that relies on racial disparities in the availability of housing or in the racial composition of New York City neighborhoods, a plaintiff must point to a defendant's policy or policies causing those disparities (id. at 2523). Indeed, "[a] robust causality requirement ensures that [r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create [or help perpetuate]" (id., quoting Wards Cove Packing Co., Inc. v Atonio, 490 US 642, [*9]653 [1989]). "Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact [as] prompt resolution of these cases is important" (Inclusive Communities Project, Inc. at 2523). A plaintiff who does not "allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact" (id.).
Plaintiff contends that the application of the property tax system to Class One and Class Two properties in majority-minority communities has a disparate impact on minorities by making housing unavailable to minority residents. Specifically, plaintiff argues that the application of the property tax system creates financial barriers that inhibit the ability of minority residents to own homes, contributes to higher rates of foreclosure in majority-minority communities and discourages the production of new rental units in affected communities. However, plaintiff does not adequately allege a causal connection between the property tax system and any racial disparities in the availability of housing. Plaintiff has failed to allege sufficient concrete facts or produce statistical evidence showing that the application of the property tax system, as opposed to other factors, causes financial barriers that inhibit the ability of minority residents to own homes. Additionally, plaintiff does not allege sufficient concrete facts or produce statistical evidence showing how the current property tax system contributes to higher rates of foreclosure or discourages the production of rental units in majority-minority communities.
Plaintiff also contends that the application of the property tax system has a disparate impact on minorities by perpetuating existing patterns of segregation in New York City. Specifically, plaintiff argues that the property tax system imposes financial burdens in majority-minority communities that prevent minority residents from moving out of, and discourage white residents from moving into, those communities. It is undisputed that New York City is a deeply segregated city. Segregation has shamefully divided our neighborhoods for a long time. However, plaintiff has failed to meet its burden "to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection" between the property tax system and the continued segregation of New York City neighborhoods sufficient to "make out a prima facie case of disparate impact" (Inclusive Communities Project, Inc., 135 S Ct at 2523). The heart of plaintiff's allegations rests on the assumption that New York City residents would elect to relocate to other neighborhoods if defendants applied the property tax system differently. Such assumption is without basis. A person's decision to relocate or not to relocate is based upon a complex set of considerations of which property taxes are but one factor. Moreover, plaintiff concedes that the changes to the property tax system it envisions would dramatically increase property taxes in majority-white neighborhoods. Such changes would make those neighborhoods less, not more, accessible to minority residents. Thus, plaintiff has failed to demonstrate a robust causality between the application of the property tax system, as opposed to other factors, and the continued patterns of segregation that have long existed in New York City.
We now analyze plaintiff's allegations that the application of the property tax system to Class One and Class Two properties in majority-minority communities has a disparate impact on minorities by imposing discriminatory terms and conditions in the sale and rental of housing. To that end, plaintiff argues that the terms and conditions of all home, condominium and cooperative sales and apartment rentals include the transfer of an illegal tax burden that make purchasing or renting a dwelling more expensive in affected communities. The portion of the FHA upon which plaintiff relies makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin" (42 USC § 3604[b]). However, in the context of taxation, defendants are not involved in the terms and conditions of the sale or rental of property (Robinson, 143 AD3d at 642; see Housing Justice Campaign v Koch, 164 AD2d 656, 672 [1st Dept 1991], lv denied 78 NY2d 858 [1991]). We hold here, as we held in Robinson that, as a matter of law, the setting of tax assessments does not constitute a term or condition of the sale or rental of property under the FHA.
For the foregoing reasons, plaintiff's complaint fails to state a claim against either the City or State defendants.
Accordingly, the order of the Supreme Court, New York County (Gerald Lebovits, J.), entered September 25, 2018, which denied the motion of defendants City of New York and New York City Department of Finance to dismiss the complaint as against them, and granted in part, and denied in part, the motion of defendants State of New York and New York Office of Real Property Tax Services to dismiss the complaint as against them, should be modified, on the law, to dismiss the remaining causes of action against the State defendants, and to grant the City defendants' motion to dismiss the complaint against them, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint. M-7369
M-7370 M-7371 - Tax Equity Now NY LLC v City of New York
Motions to file amicus curiae briefs granted, and the briefs deemed filed.
All concur.
Order, Supreme Court, New York County (Gerald Lebovits, J.), entered September 25, 2018, modified, on the law, to dismiss the remaining causes of action against the State defendants, and to
grant the City defendants' motion to dismiss the complaint against them, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.
Opinion by Kern, J. All concur.
Gische, J.P., Kapnick, Kern, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 27, 2020
CLERK



Footnotes

Footnote 1: Hellerstein considered the Town of Islip's practice of assessing real property at a fraction of its fair market value and held that New York State law, as it existed at that time, required real property to be assessed, for tax purposes, at full market value (37 NY2d at 3). The legislature responded by reforming the property tax system such that it is based upon the use of fractional assessments (see Matter of O'Shea v Board of Assessors of Nassau County, 8 NY3d 249, 254 [2007]).

Footnote 2: The annual cap on class share growth was originally 5% and has been reduced by annual amendments to the statute such that the amount by which any class share may increase is now 0% for the 2019/2020 fiscal year (RPTL 1803-a[1][c], [gg]). 

Footnote 3: It is worth noting that, outside of the context of equal protection, the Court of Appeals and the Second Department have held that it is permissible for assessing units to interpret RPTL 581 so as to compare condominiums and cooperatives to rent-regulated buildings (see Matter of Greentree At Lynbrook Condominium No. 1 v Board of Assessors of Vil. of Lynbrook, 81 NY2d 1036, 1039 [1993]; Matter of Interlaken Owners v Assessor of Town of Eastchester, 225 AD2d 696 [2d Dept 1996]).

Footnote 4: RPTL article 18 denominates each class share as its "base proportion" (see RPTL 1801[f], 1803 and 1803-a).

Footnote 5: We note that the Second Department has also held that article 18 does not violate the New York State Constitution, article XVI, § 2 (see Supreme Assoc., LLC v Suozzi, 65 AD3d 1219, 1220 [2d Dept 2009]; Tilles Inv. Co. v Gulotta, 288 AD2d 303, 305-306 [2d Dept 2001], appeal dismissed 97 NY2d 725 [2002], lv denied 98 NY2d 605 [2002]).