■ METROPOLITAN TAXICAB BOARD OF TRADE et al., Appellants, v NEW YORK CITY TAXI & LIMOUSINE COMMISSION et al., Respondents. [982 NYS2d 88]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered January 8, 2013, which denied petitioners' motion for incidental damages under CPLR 7806, unanimously affirmed, without costs.

Since 1996, under the authority of section 2303 of the New York City Charter, respondent the New York City Taxi and Limousine Commission (the TLC) has promulgated rules setting limitations of lease rates that taxi owners can charge taxi drivers who lease the taxis. The maximum amount an owner may charge a driver is known as the "lease cap." In 2009, the TLC enacted the "Driver Protection Amendments" (the tax rule) (35 RCNY 1-78 [a] [4]). Among other things, the tax rule prohibited taxi owners from collecting from their lessees New York State sales and rental taxes in amounts above the lease cap. On May 1, 2009, the rule took effect and effectively reduced the lease cap by requiring that drivers' tax payments be included within the cap. While taxi drivers who lease taxis are responsible for these taxes, taxi owners are required to act as trustees of the State, collecting the tax from drivers and paying it to the State.

In August 2009, petitioners—taxi owners who lease their taxis to drivers—commenced this hybrid action seeking declaratory relief and a judgment under CPLR article 78, in which they challenged, among other things, the tax rule. The motion court upheld the rule and this Court affirmed (71 AD3d 508 [1st Dept 2010]). As to the requirement in the rule that sales and rental taxes be included within the lease cap, this Court found that the provision had a rational basis in that it was "aimed at standardizing divergent practices regarding the payment of such taxes within the vehicle-for-hire industry, as demonstrated in the record" (id. at 510). However, the Court of Appeals reversed (18 NY3d 329 [2011]), annulling the rule as arbitrary and capricious and without rational basis.

Petitioners then moved in Supreme Court for damages under

CPLR 7806, seeking $15,732,437.07 from respondents to compensate them for "the monies that they allegedly could not have collected from their taxicab lessees while the regulation was in force"; petitioners argued that they were entitled to recover the money as incidental damages. The court denied the motion, ruling that the damages petitioners sought to recover were not "incidental to the primary relief sought" within the meaning of CPLR 7806, because the monies at issue were not funds that respondents improperly withheld or collected from petitioners and could not then pay or refund to petitioners. Further, the court held that petitioners could not recover these non-incidental damages in a plenary action because, under the doctrine of government immunity, respondents were "immune from suit for the alleged damages arising out of the enactment of 35 RCNY 1-78 (a) (4)."

We find that the motion court properly denied petitioners' motion for an award of incidental damages. To begin, with regard to incidental damages, CPLR 7806 states, in pertinent part: "Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity."

Petitioners seek damages based on the Court of Appeals' determination that the TLC's effective reduction of the taxi "lease cap" had no rational basis. The Court of Appeals' determination, however, does not lead to a conclusion that the damages are "incidental to the primary relief sought" (CPLR 7806). Contrary to petitioners' argument, monetary injury incurred as a result of agency action does not necessarily constitute incidental damages simply because a court later finds the action to have been arbitrary and capricious. Certainly, whether damages are characterized as incidental "is dependent upon the facts and issues presented in a particular case" (*Matter of Gross v Perales*, 72 NY2d 231, 236 [1988]). Even so, incidental damages are generally confined to monies that an agency either collected from or withheld from a petitioner and then was obligated to reimburse after a court annulled a particular agency determination.

For example, in *Matter of New York Tel. Co. v Nassau County* (267 AD2d 629 [3d Dept 1999], *lv denied* 95 NY2d 756 [2000]), upon which petitioner places much reliance, the court held that Nassau County had to refund to the petitioners the full amount of certain overpayments. In so doing, the court rejected the County's argument that it should not be liable for incidental

damages because it had already reallocated the funds it had improperly collected. Here, however, the TLC never collected the funds at all. Thus, the scenario in this case presents a fundamentally different question from the one in *Matter of New York Tel. Co.*, where a petitioner asked an agency to refund money that it had received and spent.

Petitioners argue that damages are considered incidental in an article 78 proceeding where an administrative determination must be annulled in order to render the damages recoverable. This view, however, constitutes an overly expansive definition of incidental damages. Were we to accept this definition, an agency would have to compensate any monetary loss incurred when its action was later annulled as an improper exercise of discretion. The established authority, however, holds otherwise.

For example, in *Matter of Gross v Perales* (72 NY2d 231 [1988]), a leading Court of Appeals case on the meaning of incidental damages, the Court found that the New York State Department of Social Services had acted in an arbitrary and capricious manner in making a determination to withhold $20 million in reimbursements from the New York City Human Resources Administration. Thus, the Court noted, the article 78 court had properly annulled the determination. Rejecting the State's argument that the claim was essentially one for money damages and thus not incidental to the article 78 proceeding, the Court stated that "the City was . . . entitled to the withheld reimbursements under the Social Services Law . . . whether or not the court directed payment, since upon nullification of the underlying administrative action, the State had a statutory duty to reimburse the City" (*id.* at 236). Accordingly, the Court concluded, "the demand for monetary relief was unquestionably incidental to the facts and issues presented" (*id.*).

Petitioners cite the *Gross* Court's emphasis on the threshold inquiry as to "whether the State acted arbitrarily and capriciously" (*id.*). However, the *Gross* Court did not hold that annulment of the agency action required the state to compensate the City for any and all losses it suffered as a result of the arbitrary action. Rather, as noted above, the Court stated that the City was entitled to the "withheld reimbursements" that the State was statutorily "obligated to reimburse" (*id.*). Here, on the other hand, as the motion court held, the City had no statutory duty to reimburse the damages that petitioners sought. While a statutory duty is not essential for a finding of incidental damages, the key point here is that the obligation to reimburse must arise from the agency's withholding of amounts it should have paid to the petitioner or its retention of amounts

it should not have collected. Neither action occurred in this case. Thus, the losses that petitioners incurred as a result of the arbitrary reduction in the taxi lease cap in this case do not qualify as incidental damages.

We turn now to the issue of governmental immunity. This doctrine applies "when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial" (*Haddock v City of New York*, 75 NY2d 478, 484 [1990]).

Petitioners first argue that the doctrine is inapplicable here because it does not apply in article 78 proceedings. In support of this proposition, petitioners rely on cases that address public employees' claims for back pay and benefits (*see e.g. Matter of Pollock v Kiryas Joel Union Free School Dist.*, 52 AD3d 722 [2d Dept 2008] [granting damages as a result of school board's decision to terminate teacher in violation of the Education Law]). However, because the petitioners' right to damages in those cases arose out of the employer-employee relationship, not out of the article 78 relief, the damages could be considered incidental to the "primary relief." Therefore, unlike here, the petitioners in those cases could have recovered damages "on the same set of facts in a separate action or proceeding . . . in the supreme court" (CPLR 7806).

In addition, as respondents aptly point out, CPLR 7806 explicitly limits the availability of damages in an article 78 proceeding (*see Gross*, 72 NY2d at 237 ["(t)he statute was adopted for the sole purpose of immunizing the State from paying consequential damages in cases where a State agency improperly denied, revoked or suspended a petitioner's license"]). That article 78 permits the court, in certain circumstances, to award damages in an action that also reviews the validity of a government determination does not create a right to damages that does not otherwise exist.

Finally, governmental immunity shields respondents from the payment of damages in a plenary action because imposition of the annulled rule was a "discretionary action[ ] taken during the performance of government functions" (*Valdez v City of New York*, 18 NY3d 69, 76 [2011]). In this regard, petitioners assert that the doctrine of governmental immunity does not apply here because imposition of the tax rule did not "involve[ ] the exercise of discretion" (citing *Haddock*, 75 NY2d at 484). That is, petitioners contend that the TLC simply did not exercise discretion at all in this case.

In support of their position, petitioners cite *Haddock v City of New York* (75 NY2d 478 [1990]). In that case, the plaintiff, a

nine-year-old girl, sued the City of New York when she was raped by a Parks Department employee with a history of violent crime, claiming that the City had negligently retained the employee. The Court of Appeals held that governmental immunity did not protect the City because it had failed to comply with its own procedures requiring informed discretion in the hiring of employees with criminal records. Thus, the *Haddock* Court found, the City had, in essence, exercised no discretion at all.

Petitioners try to liken this case to *Haddock*, noting that when the Court of Appeals considered this case (18 NY3d 329 [2011]), it found nothing in the record to justify imposition of the tax rule. Further, petitioners note, the Court of Appeals in this case rejected at least one rationale for respondents' position, characterizing that rationale as something that the "Commission never thought about" (*id.* at 333).

Nevertheless, the TLC's determination in this case, however unjustified it may have been, was an exercise of discretion; the TLC did consider the issue of imposing the tax rule and decided to impose it. Putting aside the merits of its decision, there is no escaping that the TLC exercised its discretion. Indeed, a governmental function such as rulemaking is necessarily an "exercise of judgment and discretion performed in the public interest," and is protected as a discretionary act (*Flacke v Salem Hills Sewage Disposal Corp.*, 91 AD2d 739, 741 [3d Dept 1982] [citation omitted]). Accordingly, in a plenary action, governmental immunity would preclude petitioners from recovering incidental damages.

We have considered the parties' remaining arguments and find them unavailing. Concur—Sweeny, J.P., Saxe, Moskowitz and Clark, JJ.